[No. F003568. Fifth Dist. Mar. 7, 1985.]

ANDORA ANN RUBIO, a Minor, etc., Plaintiff and Appellant, v. RUDOLF HENRY SWIRIDOFF, Defendant and Respondent.

---

**COUNSEL**

Sandell, Young & St. Louis and Charles A. Wieland for Plaintiff and Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth, Stephen J. Kane and David H. Bent for Defendant and Respondent.

## OPINION

**RANDALL, J.***—We are faced in the instant case with the novel proposition that one who engages in a provocative quarrel with another and then drives rapidly away from the scene of the confrontation is liable in damages to the survivors of the victim of an automobile accident triggered by the other disputant who drove in a reckless fashion while influenced by the heat of passion thus enkindled. The legal rules we must apply to resolve the matter are well established, but we find no remotely similar factual precedent.

On October 29, 1981, plaintiff, through her guardian ad litem, filed a complaint for the wrongful death of her mother against Rudolf Henry Swiridoff (Swiridoff).

Swiridoff subsequently filed a motion for summary judgment, which was granted.

### FACTS

Swiridoff and Linda Karcie (Karcie) had been dating each other for approximately one and one-half years. On September 30, 1978, Swiridoff was seen by Karcie's brothers with another woman. On October 1, 1978, Swiridoff telephoned Karcie several times, each time being met with an angry response. That evening Swiridoff went to a local bar and saw Karcie with another man. They exchanged "words." Swiridoff left and went to another restaurant/bar. Later, Karcie came into this establishment. They exchanged rude comments with each other in the parking lot. Swiridoff got into his Corvette and drove out of the parking lot "burning rubber."

Swiridoff headed north on Blackstone Avenue toward his home at approximately 70 miles per hour. Karcie got into her 1969 Pontiac and drove in the same direction on Blackstone Avenue at approximately 80 miles an hour heading to her home in Clovis. Along the way she passed Swiridoff. Just prior to Swiridoff turning off Blackstone Avenue toward his home he witnessed Karcie's car colliding with another car approximately a block and

---

*Assigned by the Chairperson of the Judicial Council.

one-half away. He drove to the accident, helped Karcie out of the car and waited for the police.

Consuelo Rubio, plaintiff's mother, was a passenger in the car with which Karcie collided. She was killed in the crash.

Swiridoff was arrested on suspicion that he and Karcie were drag racing. They both denied participating in any type of race and plaintiff does not now assert that they were in fact racing at the time of the accident.

### PLAINTIFF'S CONTENTIONS

Plaintiff advances six arguments against the propriety of granting summary judgment in the instant case. However, since plaintiff properly concedes that "liability for negligent conduct may only be imposed where there is a duty of care owed by the defendant to the plaintiff . . .," and since we determine that the requisite element of duty has not been demonstrated in the instant case, we need not deal with the other contentions.

### DISCUSSION

A judgment of dismissal following an order granting summary judgment by the trial court will not be reversed on appeal absent an abuse of discretion. (*Brewer* v. *Home Owners Auto Finance Co.* (1970) 10 Cal.App.3d 337, 341 [89 Cal.Rptr. 231].) The rules for adjudication of a motion for summary judgment are well known. These rules are applied on appeal with all reasonable inferences considered in favor of the party opposing the summary judgment. (*Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, 437 [74 Cal.Rptr. 895, 450 P.2d 271].)

### DID SWIRIDOFF OWE A DUTY OF CARE TO CONSUELO RUBIO?

Plaintiff asserts that Swiridoff's duty of care "arose when he reasonably anticipated, should have anticipated, that his absence would cause or encourage his girlfriend to act negligently." "[Swiridoff] knew, or should have known, that everything [Karcie] did that night was in reaction to whatever he did; that she was playing a game of 'one-ups-manship' [*sic*] . . . that he was in control of *their* actions that night; and for all practical purposes, he was in the driver's seat of *both* automobiles." Thus Swiridoff caused Karcie to violate the general duty owed others by the driver of a motor vehicle on a public street.

Swiridoff argues there is nothing in the record that supports the contention that his driving off at a high rate of speed would cause Karcie to do the

same. He asserts that plaintiff's proposition goes "beyond any established basis for finding the existence of a duty of care, and that finding such a duty under such circumstances would be contrary to the interests of justice and the administration of the judicial system."

In reply, plaintiff alleges "it is the continuing nature of the heated argument, and especially its history of immitation [*sic*] of the Respondent by his girlfriend, that establishes Respondent's duty of care herein."

Whether a duty exists is primarily a question of law. "It is the court's 'expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' (Prosser, Law of Torts (4th ed. 1971) pp. 325-326.) Any number of considerations may justify the imposition of duty in particular circumstances, including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall." (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].)

To prevail herein plaintiff must establish the requisite element of duty either on the theory that Swiridoff was guilty of nonfeasance in a situation where he was required to act, or of misfeasance.

For nonfeasance to be applicable where a party other than the defendant directly precipitated an injury-producing accident, there must exist a special relationship between the defendant and the person causing the harm, or between the defendant and the injured person (see 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 649, p. 2928; Rest.2d Torts, § 315), for at common law tort liability for the acts of others did not generally exist. (*Richards* v. *Stanley* (1954) 43 Cal.2d 60, 65 [271 P.2d 23].) Thus in *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166], a special relationship was found to exist in a wrongful death case between a mental patient and his psychiatrists, who were sued for failure to warn decedent of the patient's threats to kill her. The same principle was later applied to hold the physicians in *Myers* v. *Quesenberry* (1983) 144 Cal.App.3d 888 [193 Cal.Rptr. 733] liable to parties then unknown to them when they failed to warn their patient not to drive when emotionally overwrought and suffering from an uncontrolled diabetic condition.

No such special relationship existed either between Swiridoff and Karcie or between Swiridoff and Consuelo Rubio in the instant case. Karcie was merely a girlfriend of Swiridoff and was operating her own vehicle at

the time of the accident. Rubio was a member of the general motoring public.

Plaintiff asserts that Swiridoff is liable herein because ". . . he was in control of [his and Karcie's] actions that night." If we view this contention as an attempt to argue the creation of a duty based upon nonfeasance in that Swiridoff should have exercised control over Karcie's conduct, given the heated nature of their argument and her alleged practice of one-upmanship, the law of this state is to the contrary, for our courts have refused to impose such a duty of control over the acts of another even when the party to be controlled is in a quasi-custodial setting. (*Harland* v. *State of California* (1977) 75 Cal.App.3d 475 [142 Cal.Rptr. 201]; accord, *Myers* v. *Quesenberry, supra,* 144 Cal.App.3d at p. 894, fn. 3.)

On the other hand, if we view the assertion as an argument that there was misfeasance in that Swiridoff was in fact in control of Karcie and thus of her automobile, then there was simply a failure to produce any evidence to support the a priori assumption of the existence of such control.

Since plaintiff cannot, on the facts of this case, prevail on a theory of duty founded upon nonfeasance we turn next to examine any bases which may exist for asserting misfeasance.

Swiridoff did two things on the night of the accident which plaintiff seems to be alleging constituted misfeasance. First, he engaged in a heated argument with Karcie. Second, he entered his automobile and drove rapidly away from the scene of the argument.

Karcie was in a fighting mood because Swiridoff had dated another girl. Swiridoff was angry because Karcie retaliated by dating another man. Plaintiff argues that Swiridoff is liable because: "it is clear, based on the preceding facts and all reasonable inferences thereon, that Ms. Karcie's Sunday morning, angry telephone call to respondent was in reaction to his date with another woman the night before; that Ms. Karcie's Sunday night date with another man was in reaction to respondent's date with another woman the night before; that Ms. Karcie's angry comments at the first bar Sunday night were in reaction to respondent's comments; that Ms. Karcie's appearance at the Tia Maria bar later that night in search of respondent was in reaction to his relocation there; that her angry comments at the second bar, spilling into the parking lot, were in reaction to respondent's rude comments; and that her furious, high speed driving was in reaction to respondent's 'peeling rubber' and excessive speed."

Were we to acquiesce in this reasoning and find the existence of a duty based upon Swiridoff's angry argument with Karcie, we would be estab-

lishing tort liability at the expense of the constitutional right of free speech, and this we cannot do.

In *Olivia N.* v. *National Broadcasting Co.* (1981) 126 Cal.App.3d 488 [178 Cal.Rptr. 888], the appellant was attacked and artificially raped with a bottle by minors who had seen defendant's movie "Born Innocent," in which a similar incident occurred. It was alleged that respondent was negligent in showing such a film when it knew or should have known that it might cause youthful viewers to imitate the crime. On appeal after the granting of a nonsuit the court ruled there could be no negligence action based upon the exercise of free speech (unless the speech in question met the "incitement" standards of *Brandenburg* v. *Ohio* (1969) 395 U.S. 444 [23 L.Ed.2d 430, 89 S.Ct. 1827]), because of the chilling effect such actions would have on the exercise of a constitutional right.

In the instant case we have neither an incitement as defined by *Brandenburg, supra,* nor a reckless importuning to race through the streets as existed in *Weirum* v. *RKO General, Inc., supra,* 15 Cal.3d 40 (a radio station announcer urged listeners to be the first to arrive at a specified location to receive a prize). Consequently, no duty of care was established by virtue of the argument in the instant case.

We are left with Swiridoff's action of entering his Corvette after the argument, burning rubber and driving rapidly away from the scene of the fight. As we have previously indicated, plaintiff concedes Swiridoff and Karcie were not racing. Indeed, she assigns as error the trial court's apparent treatment of this as a drag racing case.[1]

The uncontroverted evidence before the court at the time of the hearing on the motion for summary judgment was that Swiridoff left to go to his home, and after he left Karcie left to go to her home. There was no evidence either party knew where the other was going. The accident happened after Karcie passed Swiridoff and just as he was preparing to turn off of Blackstone Avenue.

Although plaintiff argues Karcie had followed a pattern of one-upmanship to this point in the evening, repeatedly following Swiridoff's lead, we point

---

[1]Plaintiff asserts that since the lower court based its decision on drag racing it did not address the broader issues of duty, proximate cause or foreseeability. It is highly probable that the court below dealt with this case as a drag racing case because there was no other apparent viable theory upon which liability could have been founded. In any event, given our holding with regard to the issue of duty the ruling of the trial court was correct and we need not reverse because of the court's reference to drag racing. (*Snider* v. *Snider* (1962) 200 Cal.App.2d 741, 756 [19 Cal.Rptr. 709].)

out that if such a pattern had previously been established it was being broken at the time of the accident, for Karcie had passed Swiridoff by and was proceeding on her own without knowledge of Swiridoff's destination at the time of the collision.

In *Tischoff* v. *Wolfchief* (1971) 16 Cal.App.3d 703 [94 Cal.Rptr. 299] (a case involving an appeal from a jury verdict rather than from a summary judgment) the appellate court found a basis upon which a jury might have believed appellant was acting in concert with another who collided with respondent's vehicle. There the two drivers left a bar to travel together to appellant's house. They proceeded side-by-side or nearly so at speeds of 70 miles per hour or more in a 30 mile-per-hour zone. The court concluded the jury could have found the drivers were racing or ". . . indulging in a bit of automotive skylarking, goading each other to excessive speed." (*Id.,* at p. 706.) No similar common purpose or concert of action exists in the instant case upon which we might ground the requisite existence of a duty owed by Swiridoff to Consuelo Rubio.

We come, lastly, to consider the question of foreseeability. Foreseeability, a prime consideration in establishing a duty, is normally a question of fact. (*Weirum* v. *RKO General, Inc., supra,* 15 Cal.3d 40.) Foreseeability will be decided as a question of law only if " 'under the undisputed facts there is no room for a reasonable difference of opinion.' " (*Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 56 [192 Cal.Rptr. 857, 665 P.2d 947].)

Under the circumstances of the instant case the issue of foreseeability is properly resolved as a matter of law. Nothing in the record supports an inference that Swiridoff should have foreseen that his leaving the scene of the quarrel in a rapid fashion would trigger even more rapid, and reckless, driving by Karcie.

For all of the foregoing reasons we find plaintiff failed to establish a duty of care on the part of Swiridoff under the circumstances of this case, and consequently the motion for summary judgment was properly granted.

The judgment is affirmed.

Franson, Acting P. J., and Woolpert, J., concurred.