[No. B028134. Second Dist., Div. Four. Jan. 21, 1988.]

NICHOLAS DOMINGUE, a Minor, etc., Plaintiff and Appellant.
PRESLEY OF SOUTHERN CALIFORNIA, Defendant and
Respondent.

COUNSEL

Lynn Huston and Marvin B. Osband for Plaintiff and Appellant.

Woodrow D. Smith, David Keitel, Drummy, Garrett, King & Harrison, Howard F. Harrison and Michael G. Joerger for Defendant and Respondent.

OPINION

McCLOSKY, Acting P. J.—Appellant Nicholas Domingue appeals from summary judgment entered in favor of respondent Presley of Southern California in appellant's suit for personal injury based upon premises liability and general negligence. Summary judgment was predicated on Civil Code section 846.

Appellant contends: "A. The trial court improperly determined Civil Code § 846 immunized defendant from liability to recreational user when injured on a construction project on defendant's land. B. Defendant is liable to plaintiff for willful failure to guard or warn against a dangerous condition, use or structure on defendant's land. C. Respondent/defendants [sic] have not shown undisputed material facts entitling them to a summary judgment."

Appellant, a minor, was injured in March 1985, when he rode his bicycle off a six-foot drop in a graded area of property belonging to respondent. Appellant alleged two causes of action, the first for negligence. He alleged in effect that respondent was negligent in failing to guard, fence, take reasonable precautions or warn of the dangerous condition of the area, knowing that appellant and other children rode their bicycles on the site. In his second cause of action, appellant alleged that respondent "willfully or maliciously failed to guard or warn against a dangerous condition, use, structure, or activity . . . ." Respondent answered the complaint, raising as an affirmative defense that liability was barred by Civil Code section 846.

Respondent's motion for summary judgment was granted on the grounds that Civil Code section 846, as interpreted in *Delta Farms Reclamation Dist. v. Superior Court* (1983) 33 Cal.3d 699, 706-708 [190 Cal.Rptr. 494, 660 P.2d 1168], provides that owners owe no duty of care to keep the premises safe for others for recreational purposes, and that appellant had failed to show willful misconduct. ▮ Summary judgment is a drastic procedure which should be used with caution to avoid its becoming a substitute for trial. (*Ferrell* v. *Southern Nevada Off-Road Enthusiasts, Ltd.* (1983) 147 Cal.App.3d 309 [195 Cal.Rptr. 90].) On appeal, all intendments are in favor of the party who opposed the motion. (*Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, 437 [74 Cal.Rptr. 895, 450 P.2d 271].) Nevertheless, a summary judgment will not be reversed absent an abuse of the trial court's discretion. (*Rubio* v. *Swiridoff* (1985) 165 Cal.App.3d 400, 403 [211 Cal.Rptr. 338].)

Respondent's evidence in its motion for summary judgment, strictly construed (*Sheffield* v. *Eli Lilly & Co.,* (1983) 144 Cal.App.3d 583, 611 [192 Cal.Rptr. 870]), showed that appellant entered the property without any express invitation from respondent to do so, that appellant paid no consideration for entry, that he entered for the purpose of riding his bicycle to his friend Curtis's house and that the reason he rode through the dirt area where the accident occurred was "[b]ecause it's a shorter way to get there, and we just go through the dirt" and that the owner had altered the property from its natural condition by grading it where the accident occurred. The site of appellant's fall was an area which had house pads and streets graded in. No building structure on the lot in question or on the lots immediately adjacent to it had yet begun on the date of the accident.

Appellant's evidence submitted in opposition to the motion, must be liberally construed. (*Sheffield* v. *Eli Lilly & Co., supra,* 144 Cal.App.3d at p. 611.) ▮ So construed, it clearly raises a triable issue of material fact because it shows that the only reason appellant was on respondent's land at the time of the accident was that he was on his way to his friend Curtis's

house and "[b]ecause [this was] a shorter way to get there." He so testified at pages 10 and 11 of his deposition attached to the declaration of Attorney Marvin B. Osband in support of the "Opposition to Defendant's Motion For Summary Judgment [etc.]." The evidence showed that the grading at the property had resulted in construction of a dirt pad six feet high from which appellant, in the course of his trip across respondent's property, "jumped" his bicycle and fell, causing him injury.[1] Improved streets had already been built in the area. It also showed that respondent's building supervisor was in the area daily and inspected the accident site, which was neither fenced nor posted with warning signs, that appellant was never told to stay off the property by respondent, and that appellant and his friends had ridden their bicycles on the property more than 20 times before.

Section 846 of the Civil Code upon which the summary judgment in favor of defendant is predicated, provides that an owner "owes no duty of care to keep the premises safe for entry or use by others *for any recreational purpose* or to give any warning of hazardous conditions, uses of, structures, or activities on such premises" except that this section does not limit liability "(a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purpose was granted for a consideration . . .; or (c) to any persons who are expressly invited . . . to come upon the premises by the landowner." Recreational purpose, as defined by Civil Code section 846, includes "snowmobiling, and all other types of vehicular riding, . . ." (Italics added.)

---

[1] Contrary to the statement of dissent [dis. opn., p. 1073] that "plaintiff and another friend rode across a field on their bicycles, went down a 30-foot hill *in order to gain momentum,* 'lifted off' a 'little hill' and deliberately jumped over a 6-foot drop formed by the grading of a lot" (italics added) there is nothing in the record on appeal to show that plaintiff went down the 30-foot hill *"in order to gain momentum."* To the contrary, the only evidence is that he took the route he did "[b]ecause [this route] was a shorter way to get [to Curtis's house]," the little hill and the six-foot hill were one and the same hill. The only reference in the record on appeal to the 30-foot hill or doing anything about gaining momentum is in the following cross-examination of the minor plaintiff in his deposition at page 24, line 9 through 17:

"Q. Now, when you said 30 feet, you meant the hill that you came down?
"A. Yes.
"Q. So that gave you the momentum? It gave you the speed?
"A. Yes.
"Q. Then, when you came to the little hill, you could actually lift off and jump?
"A. Yes."

Appellant's evidence on a motion for summary judgment must be liberally construed and that of the moving party must be strictly construed. After quoting the rule the dissent ignores it.

But even were we to construe the evidence presented by respondent on the cross-examination of the minor plaintiff the most we would have would be a conflict in the evidence as to a material issue of fact, which in itself would preclude summary judgment.

Attached as exhibit "A" to respondent counsel's declaration in support of respondent's "Motion For Summary Judgment/Or Alternatively For Adjudication of Issues Without Substantial Controversy" are copies of pages 11 through 14 of appellant's deposition. These are attached for the supposed purpose of showing that the minor appellant was using the respondent's land for a recreational use at the time of the accident. What those pages 11 though 14 actually show in that regard, however, is that on 20 or more occasions *prior to the occasion in question* plaintiff had used the land in question for recreational purposes.

It is only by reading page 10, line 19 through page 11, line 1 of that deposition, which pages were attached as an exhibit to the declaration of Attorney Marvin B. Osband's declaration in support of the "Opposition to Defendant's Motion for Summary Judgment," that we read the crucial lines of the minor appellant's deposition which show that *he was using respondent's land on the occasion of the accident, not for recreational purposes, but as a shortcut to get to his friend Curtis's house.* Those lines read as follows:

"Q. Now, you said you were on your way to your friend Curtis' house.

"Could you have gotten to Curtis' house using paved streets?

"A. Yes.

"Q. Why did you go through the dirt area then?

"A. Because it's a shorter way to get there, and we just go through the dirt."

It is thus apparent that there was *at the very least* a triable issue of fact as to whether the land was being used for a recreational use at the time of the accident. This alone precluded the possibility of properly granting of a motion for summary judgment. The mere fact that the minor appellant was riding his bicycle to his friend's house does not make his trip across respondent's land on the occasion of the accident a recreational use. In *Gerkin* v. *Santa Clara Valley Water Dist.* (1979) 95 Cal.App.3d 1022 [157 Cal.Rptr. 612], disapproved on other grounds in *Delta Farms Reclamation Dist.* v. *Superior Court* (1983) 33 Cal.3d 699, 707 [190 Cal.Rptr. 494, 660 P.2d 1168], plaintiff fell from a two-plank bridge while either walking or walking with her bicycle across it. Summary judgment was granted in favor of defendant on the ground that plaintiff's activity was "hiking." *Held*: reversed; the term refers to *recreational hiking* in its commonly understood meaning, i.e., taking a long walk for pleasure or exercise. (*Id.,* at p. 1027.) (See 4 Witkin, Summary of Cal. Law (8th ed. 1984 Supp.) Torts, § 585, p. 375.) "In 1978, the Legislature left no doubt that the immunity provided for in section 846 was aimed exclusively at sports or recreational activities

by amending the statute to limit an owner's duty of due care to render the premises safe 'for any recreational purpose.' (Stats. 1978, ch. 86, § 1.) 'Recreational purpose' is thereafter defined as including those activities which were enumerated under the old section as well as a number of newly added ones." (95 Cal.App.3d at p. 1026.)

In view of the language of Civil Code section 846 we first note that not all vehicular or bicycle riding is recreational in nature. A truck driver delivering a load of lumber or plumbing fixtures to a lot in a vehicle would certainly not be engaged in a recreational use of that land merely because he was making a vehicular use of it at the time. A Western Union messenger delivering a telegram on a bicycle would not be making a recreational use of the land to which he or she delivered the telegram. The landowner would certainly not be immune from a claim for injuries by that truckdriver or that cyclist by virtue of the provisions of Civil Code section 846.

 Second, "a purely literal interpretation of any part of a statute will not prevail over the purpose of the legislation. [Citation.]" (95 Cal.App.3d at p. 1027.) That purpose is to encourage landowners to keep their property open to the public for recreational activities by limiting their liability for injuries sustained in the course of those activities. (*Id.,* at p. 1026.) The land involved in this case had quite clearly been withdrawn from recreational use by the activities of the developer on it.

 The trial court thus abused its discretion in granting the motion for summary judgment.

Even were we to assume arguendo that appellant was on respondent's land for a recreational purpose, the result we reach would be the same.

Were we to improperly ignore the intent of the Legislature and construe Civil Code section 846 literally, and were we to assume appellant's use of the land at the time of the accident was recreational, liability based on negligence would be precluded. Civil Code section 846, however, was enacted to encourage property owners "to allow the general public to recreate free of charge on privately owned property." (*Parish* v. *Lloyd* (1978) 82 Cal.App.3d 785, 787 [147 Cal.Rptr. 431].) A developer who grades house pads and streets on its privately owned land does not do so to enable the public to use that land for recreational purposes but rather for a different proper purpose, tract development and sale. Free recreational use by the public during such development would interfere with that developer's purpose and use of its private property and is consequently not encouraged.

■ ■ ■ ■ Civil Code section 846 may not be construed without considering the intent of the Legislature in enacting it.[2] The Legislature obviously did not intend to allow or encourage the general public to recreate free of charge on *all* privately owned property of every kind, nature and state of development. While its application is not limited to land in its natural condition (*Delta Farms Reclamation Dist.* v. *Superior Court, supra,* 33 Cal.3d at p. 706), there are obvious limits to the application of the section.

An exception has been recognized by the courts for land not suitable for, or intended for recreational use. In *Potts* v. *Halsted Financial Corp.* (1983) 142 Cal.App.3d 727, 730 [191 Cal.Rptr. 160], Division Five of the Second District Court of Appeal held that application of the statute to preclude liability for negligence where the injury was caused by a fall from the roof of a building under construction on beachfront property in a residential area would not promote the statute's purpose. Similarly, in *Paige* v. *North Oaks Partners* (1982) 134 Cal.App.3d 860, 865 [184 Cal.Rptr. 867], the same division of this district held that the statute did not preclude liability where a child was injured jumping his bicycle over an open trench in a temporary construction project in an urban shopping center. The *Paige* court stated: "Here, although plaintiff's purpose was undoubtedly recreational, the nature of the property in question shows that it is not within the intent of section 846. We find nothing in the legislative history to suggest that the Legislature intended to relieve all landowners of liability to trespassing children, whose activities usually are recreational. The fact that the words of section 846 could constitutionally be interpreted literally so as to apply to this case [citation], does not mean that they should be so interpreted." (*Id.,* at p. 864.)

---

[2] " 'The most fundamental rule of statutory construction is that "the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].). . . The provision must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. (*United Business Com.* v. *City of San Diego* (1979) 91 Cal.App.3d 156, 170 [154 Cal.Rptr. 263]; *City of Contra Mesa* v. *McKenzie* (1973) 30 Cal.App.3d 763, 770 [106 Cal.Rptr. 569].) " 'The court should take into account matters such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction.' " (*Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 733 [114 Cal.Rptr. 460, 523 P.2d 260], quoting *Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110]; *United Business Com.* v. *City of San Diego, supra,* at p. 170.)' *Honey Springs Homeowners Assn.* v. *Board of Supervisors* (1984) 157 Cal.App.3d 1122, 1136, fn. 11 [203 Cal.Rptr. 886].)" (*Fierro* v. *State Bd. of Control* (1987) 191 Cal.App.3d 735, 738-739 [236 Cal.Rptr. 516], fn. 2.)

In *Paige* v. *North Oaks Partners, supra,* the court discussed the legislative intent in the following terms: "In attempting to provide access for the public to open spaces for recreational use, the Legislature could not have intended to encourage owners and building contractors to allow children to play on their temporary construction projects." (134 Cal.App.3d at p. 863.) Appellant's evidence in this case showed that he was injured playing on respondent's construction project. Respondent points to three factual differences between this case and *Paige* v. *North Oaks Partners, supra.* We do not believe that they require a different outcome.

The first difference is that the minor here was injured jumping his bicycle from a six-foot pad rather than over an open trench as in *Paige* v. *North Oaks Partners, supra.* There is no suggestion in *Paige* v. *North Oaks Partners, supra,* that the trench was not apparent to the minor, and we fail to see how a trench is either more attractive or more dangerous to youthful bicyclists than a six-foot high pad of dirt.

The second difference is that arguably no construction had taken place at the site in the present case from 1982 to the March 1985 accident date when grading was completed, whereas in *Paige* v. *North Oaks Partners, supra,* the construction sites were temporary ones. We first observe that the record by no means supports that supposition although it does establish that no construction had taken place in the recent past on the lot where the accident occurred or on the lots immediately adjacent to it. Moreover, we do not believe that the length of time since construction work was done at the site controls the owner's or contractor's duties regarding safety. ■ An owner or contractor who begins construction and then leaves the site while developing other sites cannot complain if he is required to take the reasonable steps contemplated by consideration of the factors set forth in Restatement Second of Torts, section 339 and *O'Keefe* v. *South End Rowing Club* (1966) 64 Cal.2d 729, 740-741[3] [51 Cal.Rptr. 534, 414 P.2d 830, 16

---

[3] "In a group of decisions rendered in 1958-1959 the rule set forth in section 339 of the first Restatement of Torts was adopted as the law of this state with respect to the liability of a possessor of land for the death or injury of trespassing children. (*King* v. *Lennen* (1959) 53 Cal.2d 340, 343 [1 Cal.Rptr. 665, 348 P.2d 98]; *Garcia* v. *Soogian* (1959) 52 Cal.2d 107, 110 [338 P.2d 433]; *Courtell* v. *McEachen* (1959) 51 Cal.2d 448, 457-458 [334 P.2d 870]; *Reynolds* v. *Willson* (1958) *supra,* 51 Cal.2d 94, 98.) Since the date of those decisions, however, the Restatement Second of Torts has been promulgated. Section 339 of the new Restatement is based largely on its predecessor, but makes several changes in wording. . . . No reason appears to cling to former section 339, and the new wording of the section constitutes a worthwhile improvement in the formulation of this doctrine.

"New section 339 declares: 'A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk

A.L.R.3d 1] for the safety of minors who enter the area. While the extent to which equipment and structures are present at the site might affect the steps which an owner or contractor would be required to take in order to meet his duty of care (see *Potts* v. *Halsted Financial Corp., supra,* 142 Cal.App.3d at pp. 729-730), we do not believe that their absence precludes liability. We further observe that respondent had its building supervisor on the accident site everyday so respondent cannot successfuly maintain that nothing had gone on there in the last two or three years.

The third difference pointed to by respondent is that the fall in the present case took place in a vacant graded lot in a residential neighborhood which had "recently" been pastureland, whereas the fall in *Paige* v. *North Oaks Partners, supra,* 134 Cal.App.3d 860, took place near the loading dock of a market in an urban shopping center. We point out that according to respondent's other allegations there were no residences present and that the accident site had been in its current state for two or three years. A construction site in a coastal residential area was the site of the fall in *Potts* v. *Halsted Financial Corp., supra.* The court there stated, "While the beaches themselves indeed are suitable for recreational uses, the same cannot be said of the roofs of private homes in the process of construction, whether or not they could be scaled to observe some pretty sight." (142 Cal.App.3d at p. 732.) The court in *Paige* v. *North Oaks Partners, supra,* stated that it was not adopting an "urban versus rural land" distinction. (134 Cal.App.3d at p. 865.) We do not believe that the nature of the area in which the fall occurred precludes liability. We agree with decisions of Division Five of the Second District in the *Paige* and *Potts* cases.

We do not believe that our opinion in *Nazar* v. *Rodeffer* (1986) 184 Cal.App.3d 546 [229 Cal.Rptr. 209] (summary judgment for landowner reversed for other reasons) is apposite. The land involved in *Nazar* was a

---

of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.'

"As comment b to section 339 emphasizes, this doctrine imposes on the possessor only 'a limited obligation to the child, falling short of a duty to prevent all foreseeable harm to him, but requiring reasonable care as to those conditions against which he may be expected to be unable to protect himself.' (Accord, *Garcia* v. *Soogian* (1959) *supra,* 52 Cal.2d 107, 112.) Whether or not such an obligation or duty should be imposed, moreover, 'depends upon a number of variable factors. The question of liability must be decided in the light of all the circumstances and not by arbitrarily placing cases in rigid categories on the basis of the type of condition involved without giving due consideration to the effect of all the factors in a particular situation.' (*Id.* at p. 110 of 52 Cal.2d.)" (*O'Keefe* v. *South End Rowing Club, supra,* 64 Cal.2d at pp. 740-741.)

"vacant lot unimproved with the exception of a concrete drainage ditch. [It was not actively in the process of development.] The accident occurred when plaintiff drove his motorcycle into the ditch which traversed the property and which was obscured by weeds and other vegetation." (*Id.,* at p. 550.) In that case there was "no contention that section 846 does not immunize defendants [landowners] from their ordinary negligence." (*Id.,* at p. 551.)

As distinguished from *Nazar* the land involved in the case at bench is developed land with the house pads and the surrounding streets in the development already graded. The building supervisor was at the site on a daily basis. There was nothing missing from this developed lot. It lacked only a dwelling house and finish landscaping to be a finished private home. It is fanciful to call this undeveloped land.　■■■　It is the moving party's burden in this case to provide evidence of the defense they are attempting to establish. Their evidence establishes that this is a construction site where the land has been developed preparatory to erection of houses. It does not establish as a matter of law that this is a recreational land. In addition to the question of for what purpose appellant was on the accident site there is, at the very least, a triable issue of fact as to whether this site is an active construction site, thus land withdrawn from recreational use. The fact that children had used this land in the past, and that the owner had not yet fenced it, does not mean that it was still recreational land at the time of appellant's accident. Nothing, however, in this case serves the public policy behind Civil Code section 846 " 'to afford these property owners a modicum of protection from tort liability [to] encourage such owners to keep their lands in a natural, open and environmentally wholesome state.' " (*Paige* v. *North Oaks Partners, supra,* 134 Cal.App.3d at p. 865.) At the time of the accident this land could by no stretch of the imagination be considered recreational land, nor was it a project that was graded and completed or then abandoned to return to nature. It was developed land. As noted in *Potts,* the Legislature could not have intended the Civil Code section 846 immunity to apply to such a property: "A grant of immunity would merely encourage the negligent maintenance of construction sites, without, however, achieving the specific public benefit the Legislature envisioned." (*Potts* v. *Halsted Financial Corp,, supra,* 142 Cal.App.3d at p. 730.) This case far more clearly fits that category than the category of recreational land, as the respondents have attempted to do. It is highly developed land which just did not yet have a house built on it. The land had plainly been withdrawn from public recreational use.

We therefore hold that the trial court abused its discretion in granting respondent's motion for summary judgment. (Code Civ. Proc., § 437c, subd. (c).) Our disposition of the foregoing issues makes it unnecessary for

us to reach the issue of willful misconduct. (See *Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117, 127 [109 Cal.Rptr. 724].)

The judgment is reversed. Appellant to recover his costs on appeal.

Rothman, J.,* concurred.

**GEORGE, J.**—I dissent.

Plaintiff appeals from a summary judgment entered in favor of defendant. Plaintiff, a minor,[1] suffered a broken wrist while riding his bicycle on defendant's property. The complaint alleged causes of action for premises liability and general negligence. Summary judgment was predicated on Civil Code section 846 (hereafter section 846), which substantially limits the duty of care owed by a landowner to persons who permissively use property free of charge for designated recreational purposes. (*Delta Farms Reclamation Dist.* v. *Superior Court* (1983) 33 Cal.3d 699, 704 [190 Cal.Rptr. 494, 660 P.2d 1168].) Among those purposes is recreational bicycle riding. (§ 846.)[2]

---

* Assigned by the Chairperson of the Judicial Council.

[1] The record before us does not indicate plaintiff's age.

[2] The recreational uses specified by section 846 encompass "riding, including animal riding" and "vehicular riding." Recreational bicycle riding comes within the statutory category of "riding" rather than "vehicular riding," since the term "vehicle" excludes bicycles (Veh. Code, § 670) and the term "bicycle" is defined, in part, as "a device upon which any person may *ride* . . . ." (Veh. Code, § 231, italics added.)

Section 846 provides: "An owner of any estate or any other interest in real property, whether possessory or nonpossessory, *owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises* to persons entering for such purpose, except as provided in this section. [¶] *A "recreational purpose,'* as used in this section, *includes* such activities as fishing, hunting, camping, water sports, hiking, spelunking, sport parachuting *riding, including animal riding, snowmobiling, and all other types of vehicular riding,* rock collecting, sightseeing, picnicking, nature study, nature contacting, recreational gardening, gleaning, winter sports, and viewing or enjoying historical, archaeological, scenic, natural, or scientific sites. [¶] An owner of any estate or any other interest in real property, whether possessory or nonpossessory, who gives permission to another for entry or use for the above purpose upon the premises does not thereby (a) extend any assurance that the premises are safe for such purpose, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of such person to whom permission has been granted except as provided in this section. [¶] This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purpose was granted for a consideration other than the consideration, if any, paid to said landowner by the state, or where consideration has been received from others for the same purpose; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner. [¶] Nothing in

Plaintiff contends that defendant is not entitled to the protection afforded by section 846 because (1) defendant's land fell within a judicially recognized exception to the statute applicable to property unsuitable for recreational purposes; and (2) defendant's conduct fell within the statutory exception for "willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity." For the reasons discussed below, I find plaintiff's contentions to be without merit and would affirm the judgment of the court below.

## FACTS

The facts before the court were basically undisputed. The location of the March 1985 accident was unimproved real property, which required no maintenance, described as the South Pointe project in Walnut, California. At that time the site included an undeveloped area of approximately 10 acres where preliminary grading had taken place between 1980 and 1982 in anticipation of residential construction. *No construction had ever taken place on this site, and during the three-year period between the preliminary grading and plaintiff's accident, defendant had done nothing to alter the condition of the land at the site of the accident.* Areas of the development project where "actual construction was going on" were fenced, but "not where only grading of lots had been completed." Some improved streets had been built in the area. The site supervisor "visually observed the property each day he was on the site."

Initially, at the suggestion of his friends, plaintiff had gone on the property before it had been graded, when it had been used for grazing cattle. After the property was graded plaintiff rode his bicycle on it frequently, probably more than 20 times, despite being told by his parents to "[s]tay out of the hills because you might get hurt." No one else had ever told him to stay off the property, and warning signs were not posted. Plaintiff had never been invited onto the property by the owners, nor had he paid anyone to enter the property.

Apparently trails had been cut into the soil by bicycle riders using the site as a jump, but defendant had not constructed or otherwise created any bicycle trails on the property.

On the date of the accident, en route to visit a friend, plaintiff rode his bicycle through defendant's property "[b]ecause it's a shorter way to get there." While some of plaintiff's friends used a plastic object to slide down a

this section creates a duty of care or ground of liability for injury to person or property." (Italics added.)

wet grassy slope, plaintiff and another friend rode across a field on their bicycles, went down a 30-foot hill in order to gain momentum, "lifted off" a "little hill," and deliberately jumped over a 6-foot drop formed by the grading of a lot. Plaintiff had gone over this "bike jump" on prior occasions because it was "fun." On the occasion in question, plaintiff fell but his friend did not. Plaintiff broke his wrist as a result of the accident.

## PROCEDURAL BACKGROUND AND STANDARD OF REVIEW

In his complaint plaintiff alleged that defendant was negligent in failing to fence "the area of construction off from the general public," to post signs warning of the dangerous condition of the area, and to notify nearby residents of the danger the condition posed to children who were known to ride bicycles in the area. Defendant answered the complaint raising, among others, the affirmative defense that liability was barred by section 846.

The court below granted defendant's motion for summary judgment on the basis of the limited immunity conferred by section 846 as construed in *Delta Farms Reclamation Dist.* v. *Superior Court, supra,* 33 Cal.3d at pages 707-708, distinguishing the case of *Paige* v. *North Oaks Partners* (1982) 134 Cal.App.3d 860 [184 Cal.Rptr. 867], and concluding that plaintiff's alternative argument, the statutory exception for "willful or malicious failure to . . . warn," was "not even close."

Code of Civil Procedure section 437c, subdivision (c), provides that a "motion for summary judgment *shall* be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Italics added.) "Thus, summary judgment was mandatory if the statutory requirements were met. The procedure is designed to test whether any material triable issues of fact exist, but not to resolve disputed factual issues. (See *Leo F. Piazza Paving Co.* v. *Foundation Constructors, Inc.* (1981) 128 Cal.App.3d 583, 589 [177 Cal.Rptr. 268].)

"And where defendants are the moving parties, as here, they must either negate a necessary element of the plaintiff's case or state a complete defense. (*Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 338 [138 Cal.Rptr. 670].) To avoid a summary judgment, plaintiff must show a material triable issue of fact with respect to the offered defense or the negated essential element. (*Ibid.*) '[N]o amount of factual conflicts upon other aspects of the case will affect the result and the motion for summary judgment should be granted. [Citation.]' (*Ibid.*)

"An order of summary judgment will not be reversed in the absence of a clear showing of abuse of discretion. (*Leo F. Piazza Paving Co.* v. *Foundation Constructors, Inc., supra,* 128 Cal.App.3d at p. 589; *Brewer* v. *Home Owners Auto Finance Co.* (1970) 10 Cal.App.3d 337, 341 [89 Cal.Rptr. 231].)" (*Fireman's Fund Ins. Co.* v. *Fibreboard Corp.* (1986) 182 Cal.App.3d 462, 465-466 [227 Cal.Rptr. 203].)

DISCUSSION

I

WHETHER THE PROPERTY ON WHICH PLAINTIFF'S ACCIDENT OCCURRED WAS UNSUITABLE FOR RECREATIONAL PURPOSES AND THUS UNPROTECTED BY THE LIMITED IMMUNITY CONFERRED BY CIVIL CODE SECTION 846

The terms of section 846, construed literally, preclude liability on the part of defendant for ordinary negligence. Plaintiff's use of defendant's property was for a specified recreational use, recreational bicycle riding; plaintiff was not expressly invited onto the property by defendant, and plaintiff did not pay consideration to anyone for permission to enter and use the property. The principal question before us is whether defendant's land fell within a judicially recognized exception to the statute applicable to property unsuitable for recreational purposes.

Alteration of the landscape, in this case by the grading of lots, does not necessarily remove land from the protection afforded by the statute. *The Supreme Court has expressly noted that "section 846 is by no means limited to land in its natural condition—it specifically mentions 'structures'—it* obviously encompasses improved streets." (*Delta Farms Reclamation Dist.* v. *Superior Court, supra,* 33 Cal.3d at pp. 706-707, italics added.) "*[T]he statute makes no distinction between natural and artificial conditions.*" (*Id.,* at p. 708, italics added.)

As recognized by the Supreme Court, "[t]he purpose of section 846 is to encourage property owners 'to allow the general public to recreate free of charge on *privately* owned property.' (*Parish* v. *Lloyd* (1978) 82 Cal.App.3d 785, 787 [147 Cal.Rptr. 431] italics added; see also *Lostritto* v. *Southern Pac. Transportation Co.* (1977) 73 Cal.App.3d 737, 747 [140 Cal.Rptr. 905].) This purpose is achieved by a basic declaration that owners owe 'no duty of care to keep the premises safe' for certain specific recreational purposes." (*Delta Farms Reclamation Dist.* v. *Superior Court, supra,* 33 Cal.3d at pp. 707-708.) The statute "is an exception to the general rule that a private landowner owes a duty of reasonable care to any person coming

upon the land. [Citations.] Under section 846, the landowner's duty toward the nonpaying, uninvited recreational user is, in essence, no greater than that owed a trespasser under the common law as it was known prior to *Rowland* v. *Christian* [(1968) 69 Cal.2d 108, 119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]]. [Citations.] The recreational trespasser on private land assumes the risk of injury, therefore, absent willful or malicious misconduct by the landowner. (See § 846.) The legislative purpose of that statute, by eliminating the threat to the landowner of gratuitous tort liability, is to encourage the landowner to keep the property accessible and open to the public for recreational use without charge. [Citations.]" (*Charpentier* v. *Von Geldern* (1987) 191 Cal.App.3d 101, 107-108 [236 Cal.Rptr. 233]. See also *New* v. *Consolidated Rock Products Co.* (1985) 171 Cal.App.3d 681, 688-689.) "In other words, the statutory goal is to constrain the growing tendency of private landowners to bar their land to the public for recreational uses because of the threat of gratuitous tort liability. [Citations.]" (*Pacific Gas & Electric Co.* v. *Superior Court* (1983) 145 Cal.App.3d 253, 256 [193 Cal.Rptr. 336]; *Parish* v. *Lloyd* (1978) 82 Cal.App.3d 785, 787-788 [147 Cal.Rptr. 431].)

The majority's conclusion that defendant's property was exempt from the provisions of section 846, as land unsuitable for recreational purposes, is based on its reading of two cases decided by this district, *Paige* v. *North Oaks Partners, supra,* 134 Cal.App.3d 860, distinguished by the trial court herein, and *Potts* v. *Halsted Financial Corp.* (1983) 142 Cal.App.3d 727 [191 Cal.Rptr. 160].

Although *Paige* and *Potts* concluded the Legislature's intent was not to apply the limited immunity conferred by section 846 to the particular types of construction projects involved in the two cases, the rationale of those decisions is totally inapplicable to the present case for the reasons set forth below.

The property involved in the *Paige* case was an area adjacent to a market located in an urban shopping center. A general contractor, "engaged in a construction project for repair and alteration of the premises," had left "an open trench in the construction area." Plaintiff minor and his friends were engaged in playing a game of tag on bicycles when plaintiff unsuccessfully attempted to jump over the trench on his bicycle, falling into the trench and suffering injury. (*Paige* v. *North Oaks Partners, supra,* 134 Cal.App.3d at pp. 861-862.) The Court of Appeal concluded it was "inconceivable that the Legislature intended [§ 846] to apply to a case such as this one. . . . In attempting to provide access for the public to open spaces for recreational use, the Legislature could not have intended to encourage owners and building contractors to allow children to play on their temporary construc-

tion projects." (*Id.,* at p. 863.) This court was careful to circumscribe narrowly its ruling in *Paige:* "We have no occasion to go beyond the facts of this case: a child injured while jumping over an open trench in a temporary construction project near the loading dock of a market in an urban shopping center. We hold simply that under the circumstances of this case, this is not the type of property to which the statute was intended to apply." (*Id.,* at p. 865.)

In the *Potts* case a group of friends entered two buildings under construction on beachfront property adjacent to a public road for the purpose of "gain[ing] a better view of the ocean and to discover whether [one of the persons] could rent a room once the buildings were finished. As construction workers [two of them] were also interested in inspecting the type of construction used on beachfront properties." While walking across two loose boards which connected the roofs of the two buildings, plaintiff fell to the ground and injured himself. (*Potts* v. *Halsted Financial Corp., supra,* 142 Cal.App.3d at p. 729.) The Court of Appeal concluded: "Application of the statute here would fail to promote this intent of the Legislature. Landowners who have begun to erect private dwelling units have already withdrawn this portion of their land from public recreational access by making it unsuitable for such purposes. It is highly improbable that the Legislature intended to encourage landowners to allow the public access to places as unsuitable for recreation as the rafters or the roofs of their new homes or apartment units, or indeed that landowners would ever be likely to permit such a use, whether or not they had been granted immunity. A grant of immunity would merely encourage the negligent maintenance of construction sites, without, however, achieving the specific public benefit the Legislature envisioned." (*Id.,* at p. 730.)

Far more analogous to the situation before us is that presented to this division in *Nazar* v. *Rodeffer* (1986) 184 Cal.App.3d 546, 550 [229 Cal.Rptr. 209], where "Plaintiff had entered defendants' property for the recreational purpose of riding motorcycles. The property was a *vacant lot* unimproved with the exception of a concrete drainage ditch. The accident occurred when plaintiff drove his motorcycle into the ditch which traversed the property and which was obscured by weeds and other vegetation." (Italics added.)

In *Nazar* we concluded: "Plaintiff's next contention that a triable issue of fact existed concerning *the suitability of the land for recreational purposes* is without merit. [Italics added.]

"Our state Supreme Court has noted that '[t]he purpose of section 846 is to encourage property owners "to allow the general public to recreate free

of charge on *privately* owned property." [Citation.]' (*Delta Farms Reclamation Dist.* v. *Superior Court* (1983) 33 Cal.3d 699, 707-708 [190 Cal.Rptr. 494, 660 P.2d 1168], cert. den., 464 U.S. 915 [78 L.Ed.2d 257, 104 S.Ct. 277] [italics in original].) *The purpose of this section would be furthered by its application in this case.* [Italics added.]

"The land on which plaintiff's motorcycle accident occurred was privately owned by defendants. Plaintiff entered the property for the recreational purpose of riding motorcycles. Deposition testimony established that the property was used by motorcyclists '[f]or a long time, very, very long time.' This was established by the existence of a motorcycle track or trail on the property.

"The mere existence of a man made structure on the land does not detract from the fact that defendants' land serves a recreational purpose. Civil Code section 846 itself states that an owner of real property 'owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, *structures,* or activities on such premises to persons entering for such purpose, . . .' ([Italics] added.) Our state Supreme Court has noted 'that the statute makes no distinction between natural and artificial conditions.' (*Delta Farms Reclamation Dist.* v. *Superior Court, supra,* 33 Cal.3d at p. 708.) *Potts* v. *Halsted Financial Corp.* (1983) 142 Cal.App.3d 727 and *Paige* v. *North Oaks Partners* (1982) 134 Cal.App.3d 860, which involved accidents at construction sites are distinguishable from the case at bench.

"Plaintiff maintains that the occurrence of prior accidents on the land could render it unsuitable for recreational purposes such that Civil Code section 846 would not apply. We disagree. Acceptance of this argument would defeat the obvious purpose of this statute.

"We conclude that no triable issue of material fact existed regarding the suitability of the land for recreational purposes." (*Nazar* v. *Rodeffer, supra,* 184 Cal.App.3d at pp. 554-555.)

The majority concludes that the circumstance of plaintiff's being en route to his friend's home by "a shorter way" at the time of the accident "alone precluded the possibility of properly granting of a motion for summary judgment." (Maj. opn., *ante,* p. 1065.) Relying on *Gerkin* v. *Santa Clara Valley Water Dist.* (1979) 95 Cal.App.3d 1022, 1027[3] [157 Cal.Rptr. 612],

---

[3] *Gerkin* has been "disapproved" by the Supreme Court insofar as the decision applies section 846 to public entities. (*Delta Farms Reclamation Dist.* v. *Superior Court, supra,* 33 Cal.3d at p. 707.)

the majority finds the foregoing circumstance attending plaintiff's bike riding incompatible with *recreational* use of defendant's property.

*Gerkin* involved a minor who fell off two planks bridging a dry creek bed as she walked her bicycle (at no time riding) across the defendant's property en route to a grocery store with her mother's permission for the purpose of purchasing an item and making a telephone call. In concluding that the plaintiff's activity did not comprise "recreational 'hiking,'" the Court of Appeal held: "We conclude that for an activity to fall within the term 'hiking' as it is used in section 846, it must be proved not merely that the user was 'walking' across the property, but that the activity constituted recreational 'hiking' within the commonly understood meaning of that word, i.e., to take a long walk for pleasure or exercise. (See Webster's Seventh New Collegiate Dict. (1971) p. 393.) We agree with respondents that the test should not be based on the plaintiff's state of mind. We believe, however, that such a determination must be made through a consideration of the totality of facts and circumstances, including the path taken, the length and purpose of the journey, the topography of the property in question, and the prior use of the land. While the plaintiff's subjective intent will not be controlling, it is relevant to show purpose." (95 Cal.App.3d at p. 1027.)

In the present case, although the ultimate destination in plaintiff's excursion was the home of a friend, I submit that plaintiff's activity on defendant's property was incompatible with anything *but* a recreational use. As previously noted, on the date of the accident plaintiff and another friend rode across a field on their bicycles, went down a 30-foot hill to increase their speed, "lifted off" a "little hill," and deliberately jumped over a 6-foot drop formed by the grading of a lot. Plaintiff's flight was not unintended; he had ridden his bicycle on the property on at least 20 prior occasions and was aware of the "bike jump," having previously ridden over it. Trails had been cut into the soil by bicycle riders using the site as a jump. I cannot accept the majority's conclusion that, in contrast, on the particular "occasion of the accident," plaintiff's use of defendant's property was "not for recreational purposes." (Maj. opn., *ante,* p. 1065.)

At oral argument plaintiff suggested to us that the occurrence of his injury establishes by itself the unsuitability of the site for recreational purposes, a contention which we explicitly rejected in the above-quoted holding in *Nazar.* Anyone familiar with such sports as skiing and off-road cycling (which come within the uses protected under § 846) would note that even on terrain ideally suited for recreational pursuits, injury will occur from time to time due to the negligence of the recreational user, some defect or malfunction of the user's equipment, or other fortuitous circumstances.

Only a person with the dimmest of childhood memories could doubt that the experience of defying the law of gravity by becoming momentarily airborne astride a bicycle is a recreational pursuit, *despite* the attendant risk (or, perhaps, *because* of it).

In fact, the only active use of defendant's property reflected in the record, once cattle grazing had ceased and the lots were graded three years prior to the accident, was recreational use, by plaintiff and his friends on at least twenty occasions. There is nothing in the record to support the majority's conclusion that the property in question was "highly developed land" or that "recreational use by the public during such development would interfere with that developer's purpose and use of its private property." (Maj. opn., *ante,* pp. 1066, 1070.)

As previously observed, section 846 refers to "structures," and the Supreme Court has taken note of the statute's applicability to both "natural and artificial conditions" on the land. (*Delta Farms Reclamation Dist.* v. *Superior Court, supra,* 33 Cal.3d at pp. 706, 708.) Clearly, if this division could find that a "vacant lot unimproved with the exception of a concrete drainage ditch," located in an urban area adjacent to the intersection of the 605 Freeway and Beverly Boulevard in Los Angeles County, "serves a recreational purpose" (*Nazar* v. *Rodeffer, supra,* 184 Cal.App.3d at pp. 550, 554), the grading of a portion of the 10-acre property involved in the present case should not be deemed to render it "unsuitable for recreation" (*Potts* v. *Halsted Financial Corp., supra,* 142 Cal.App.3d at p. 730) under the foregoing case authority. The site of plaintiff's bicycle accident, which had been graded years earlier and on which no construction activity had taken place, was far more similar to the vacant property in *Nazar* than to the open trench in the urban shopping center construction area discussed in *Paige* or the rooftop construction area involved in *Potts.*

The majority frustrates the Legislature's clearly expressed intent in enacting section 846 by extending to the present case the narrow exception recognized in *Paige* and *Potts.* The majority's conclusion that acreage is withdrawn from recreational use once it is graded is not supported by the language of the statute or by prior decisional law. Such a rule, however beneficent its application might appear in the present case, would best be left to possible legislative amendment of section 846 rather than to judicial attempts at speculation concerning what the Legislature might have intended in the present situation.

Although the court in *Charpentier* v. *Von Geldern, supra,* 191 Cal.App.3d 101, was concerned with application of the statute to a large tract which indisputably was suited to recreational use, I note that court's

assessment of the effect of failing to construe section 846 so as to "encourage[ ] private landowners to keep their properties open to the public for the enumerated recreational purposes"—namely, the consequent imposition of substantial financial burdens on landowners required to fence in their acreage, and ever-increasing restrictions on the public's access to already scarce open recreational land. "The owner of a large parcel of undeveloped property . . . faces a difficult task defending the property from trespassers . . . and in taking precautions to render the premises safe. If such landowners were exposed to the risk of negligence liability for injuries sustained by trespassing recreational users, the effect would undoubtedly be to encourage them to withdraw hundreds of miles of . . . land . . . from recreational access. This result would significantly gut the legislative objective of section 846 and should be avoided. (See *Collins* v. *Tippett* [(1984)] 156 Cal.App.3d [1017,] at p. 1020 [203 Cal.Rptr. 366].)" (191 Cal.App.3d at p. 111.)

I conclude that defendant's land did not fall within the judicially recognized exception to section 846 applicable to property unsuitable for recreational purposes.

## II

### WHETHER DEFENDANT'S CONDUCT FELL WITHIN CIVIL CODE SECTION 846'S EXCEPTION FOR "WILLFUL OR MALICIOUS FAILURE TO GUARD OR WARN AGAINST A DANGEROUS CONDITION, USE, STRUCTURE OR ACTIVITY"

Plaintiff contends additionally that the trial court erred in granting summary judgment because, even if the property was not unsuitable for recreational purposes, defendant's conduct fell within the exception in section 846 for "willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity."

I agree with the lower court, which found plaintiff's alternate theory of willful or malicious failure to warn "not even close."

In construing section 846, this division has noted: " 'The concept of wilful misconduct has a well-established, well-defined meaning in California law. "Willful or wanton misconduct is intentional wrongful conduct, done either with a knowledge that serious injury to another will probably result, or with a wanton and reckless disregard of the possible results. [Citation.]" ' (*New* v. *Consolidated Rock Products Co.* (1985) 171 Cal.App.3d 681, 689 [217 Cal.Rptr. 522], quoting *O'Shea* v. *Claude C. Wood Co.* (1979) 97 Cal.App.3d 903, 912 [159 Cal.Rptr. 125].)

" ' "Three essential elements must be present to raise a negligent act to the level of wilful misconduct: (1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is a probable, as opposed to a possible, result of the danger, and (3) conscious failure to act to avoid the peril. [Citations.]" ' [Citations.]" (*Nazar* v. *Rodeffer, supra,* 184 Cal.App.3d 546, 552; see also *New* v. *Consolidated Rock Products Co., supra,* 171 Cal.App.3d 681, 689-691.)

Plaintiff made no showing of any prior accidents, of a hidden dangerous condition, or of a recent change of conditions making the area especially dangerous to bicycle riders. In contrast to the present case, the defendant in *Lostritto* v. *Southern Pac. Transportation Co.* (1977) 73 Cal.App.3d 737, 744-745 [140 Cal.Rptr. 905], was informed that past recreational users of the property had been injured (diving from defendant's railroad trestle) but failed to post warning signs or erect inexpensive barriers to prevent the practice. Thus the Court of Appeal in that case affirmed the lower court's denial of defendant's motion for judgment notwithstanding the verdict as to the claim of willful misconduct (while also affirming the granting of that motion, under the provisions of § 846, as to the count alleging ordinary negligence). (See also *Charpentier* v. *Von Geldern, supra,* 191 Cal.App.3d 101, 113; *O'Shea* v. *Claude C. Wood Co.* (1979) 97 Cal.App.3d 903, 913.)

None of the affidavits introduced by the parties at the summary judgment proceedings support plaintiff's conclusional statement in the complaint that defendant willfully or maliciously failed to warn against dangers which were known or which should have been known.

I therefore conclude that defendant's motion for summary judgment was properly granted, and I would affirm the judgment of the court below.

On February 3, 1988, the opinion was modified to read as printed above.