[Civ. No. 66665. Second Dist., Div. Five. May 5, 1983.]

SCOTT D. POTTS, Plaintiff and Appellant, v.
HALSTED FINANCIAL CORPORATION, Defendant and Respondent.

COUNSEL

I. Alfred Breckler and Jack Milton Janis for Plaintiff and Appellant.

Patterson, Ritner, Lockwood, Zanghi & Gartner and Jeralyn Keller for Defendant and Respondent.

OPINION

ASHBY, J.—Appellant Scott Potts seeks reversal of a judgment of nonsuit terminating his action for negligence against respondent Halsted Financial Corporation, the owner of a construction site at Malibu Beach where appellant fell and injured himself. The nonsuit was based on Civil Code section 846,[1] which

[1]At the time appellant was injured, section 846 provided: "An owner of any estate in real property owes no duty of care to keep the premises safe for entry or use by others for fishing, hunting, camping, water sports, hiking, spelunking, riding, including animal and all types of vehicular riding, rock collecting, or sightseeing or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purposes, except

exempts property owners from liability for negligence to those who come upon their property for recreational purposes without express invitation and without paying consideration.

## FACTS

On the afternoon of July 4, 1977, appellant, his friends Tom Letts and Richard Logsden, and Richard's 14-year-old sister Bambi, decided to drive to Malibu Beach to picnic and celebrate the holiday with fireworks. Arriving at Malibu Beach Road, they saw two buildings then under construction on beach front property within the residential area of the road and decided to inspect them. Appellant, who saw no signs prohibiting entry, wanted both to gain a better view of the ocean and to discover whether he could rent a room once the buildings were finished. As construction workers, he and Richard Logsden were also interested in inspecting the type of construction used on beach front properties.

The group entered through the front door of one of the buildings and walked up the stairwell to the roof. Two loose boards connected the roofs of the buildings. Bambi wandered away from the group and somehow reached the roof of the second building. There, she panicked at the prospect of returning and began to scream for help. Appellant decided to come to her aid and walked across the boards. On the other side, he discovered that the stairwell of the second building had been nailed shut. He therefore guided Bambi back across the boards. As the girl stepped to safety, the boards slipped apart and appellant fell two stories to the ground, suffering multiple injuries.

According to an expert testifying on appellant's behalf, the arrangement of the boards connecting the buildings was unsafe; the general custom in the industry was to use a steady walkway with guardrails to provide access from one building to another. Such a walkway could have been constructed in less than an hour. Another common practice was to erect chainlink fences to prevent strangers from entering construction sites. A fence surrounding the buildings in

as provided in this section. [¶] An owner of any estate in real property who gives permission to another for entry or use for the above purposes upon the premises does not thereby (a) extend any assurance that the premises are safe for such purposes, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of such person to whom permission has been granted except as provided in this section. [¶] This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purposes was granted for a consideration other than the consideration, if any, paid to said landowner by the state; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner. [¶] Nothing in this section creates a duty of care or ground of liability for injury to person or property." (Stats. 1976, ch. 1303, § 1, p. 5859.)

the instant case would have cost $595. Respondent's expert, on the other hand, testified that the use of boards to connect buildings is not improper, and that fences around construction sites are not required.

At the close of respondent's case, the trial judge granted a motion for nonsuit, finding that section 846 rendered respondent immune from liability. The judge did not decide whether respondent had been negligent.

## DISCUSSION

We find that section 846 does not bar inquiry into respondent's alleged negligence in maintaining his construction site. Statutes must be given a reasonable interpretation and application in accordance with the purpose and intention of the Legislature. (*Paige* v. *North Oaks Partners* (1982) 134 Cal. App.3d 860, 863 [184 Cal.Rptr. 867].) The purpose of section 846, as our Supreme Court has recently stated, is to "encourage property owners 'to allow the general public to recreate free of charge on privately owned property.'" (*Delta Farms Reclamation Dist.* v. *Superior Court* (1983) 33 Cal.3d 699, 707 [190 Cal.Rptr. 494, 660 P.2d 1168]; italics omitted.) Expressed another way, the statute was intended "to reduce the growing tendency of landowners to withdraw land from recreational access by removing the risk of gratuitous tort liability that a landowner might run unless he could successfully bar any entry to his property for enumerated recreational uses." (*English* v. *Marin Mun. Water Dist.* (1977) 66 Cal.App.3d 725, 731 [136 Cal.Rptr. 224], disapproved on other grounds in *Delta Farms Reclamation Dist.* v. *Superior Court, supra,* 33 Cal.3d at p. 707; *Nelsen* v. *City of Gridley* (1980) 113 Cal.App.3d 87, 91 [169 Cal.Rptr. 757]; *Parish* v. *Lloyd* (1978) 82 Cal.App.3d 785, 787-788 [147 Cal.Rptr. 431].) Application of the statute here would fail to promote this intent of the Legislature. Landowners who have begun to erect private dwelling units have already withdrawn this portion of their land from public recreational access by making it unsuitable for such purposes. It is highly improbable that the Legislature intended to encourage landowners to allow the public access to places as unsuitable for recreation as the rafters or the roofs of their new homes or apartment units, or indeed that landowners would ever be likely to permit such a use, whether or not they had been granted immunity. A grant of immunity would merely encourage the negligent maintenance of construction sites, without, however, achieving the specific public benefit the Legislature envisioned. Statutory construction which ignores the legislative purpose or leads to a result not contemplated must be avoided. (*Paige* v. *North Oaks Partners, supra,* 134 Cal.App.3d at p. 864.)

Other courts asked to apply the statute without regard to the nature of the property involved have refused to do so. In *Paige* v. *North Oaks Partners,*

*supra,* 134 Cal.App.3d at pages 864-865, we held that an area next to a loading dock of a market in an urban shopping center was not within the intent of section 846 despite the fact that the plaintiff had used the area for recreational purposes. And in *Nelsen* v. *City of Gridley, supra,* 113 Cal.App.3d 87, 91, the court refused to apply section 846 to public landowners where a grant of immunity "would not further encourage recreational usage." (See also *Delta Farms Reclamation Dist.* v. *Superior Court, supra,* 33 Cal.3d at pp. 706-707.)

The only case to hold that section 846 applies to property unsuited for recreation is *Lostritto* v. *Southern Pac. Transportation Co.* (1977) 73 Cal.App.3d 737, 749 [140 Cal.Rptr. 905]. The *Lostritto* court reached this result partly because it felt that "[t]he Legislature probably decided not only that freedom of recreation should be encouraged, but also that it is unfair to permit claims for negligence in favor of persons who choose to enter the lands of others for the described activities." (*Id.*) The court's guess concerning this additional purpose is not supported by the statute's language or its sparse legislative history (see (1963) 38 State Bar J. 647; *Phillips* v. *United States* (9th Cir. 1979) 590 F.2d 297, 299) and we therefore decline to adopt it. (See *Rushing* v. *Powell* (1976) 61 Cal.App.3d 597, 604 [130 Cal.Rptr. 110].) Moreover, this construction of section 846 ignores the general development of California tort law, which has discarded the arbitrary and indiscriminate application of blanket immunities. In *Rowland* v. *Christian* (1969) 69 Cal.2d 108, 118-119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], the Supreme Court stated: "[T]he basic policy of this state set forth by the Legislature in section 1714 of the Civil Code is that everyone is responsible for an injury caused to another by his want or ordinary care or skill in the management of his property. The factors which may in particular cases warrant departure from this fundamental principle do not warrant the wholesale immunities resulting from the common law classifications [of invitee, licensee or trespasser]." (*Id.*)[2] The Legislature's failure to revive these immunities when it amended section 1714 ten years after *Rowland* creates a strong presumption that it approved of the principles stated by the Supreme Court. (Stats. 1978, ch. 929, § 2, p. 2904; see *People* v. *Hallner* (1954) 43 Cal.2d 715, 719 [277 P.2d 393].) The interpretation of section 846 urged by *Lostritto,* indiscriminately barring all recreational users from legal recourse, takes no account of this development, and leads to results the Legislature could not have intended. For example, respondent herein would be immune from suits by minors coming to play on the construction site, but would have to defend itself against a thief injured while stealing respondent's lumber. Statutes

---

[2]The Supreme Court has also discarded charitable immunities (*Malloy* v. *Fong* (1951) 37 Cal.2d 356 [232 P.2d 241]), intrafamily immunities (e.g., *Gibson* v. *Gibson* (1971) 3 Cal.3d 914 [92 Cal.Rptr. 288, 479 P.2d 648]), and governmental immunity (*Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457]), and has declared the automobile guest statute unconstitutional (*Brown* v. *Merlo* (1973) 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505]).

are not to be given applications leading to inequitable and patently absurd results. (*Delta Farms Reclamation Dist.* v. *Superior Court, supra,* 33 Cal.3d at pp. 706-707.)

Respondent contends it is nevertheless entitled to the protection of section 846 because the roofs of these dwelling units afford a view of California's beaches and coastal bluffs, traditional areas of public recreation. The argument sweeps too broadly. While the beaches themselves indeed are suitable for recreational uses, the same cannot be said of the roofs of private homes in the process of construction, whether or not they could be scaled to observe some pretty sight.

We hold that the determination of respondent's liability to appellant is not barred by Civil Code section 846; instead, the case should be decided according to general principles of negligence law. (Civ. Code, § 1714; *Rowland* v. *Christian, supra,* 69 Cal.2d at pp. 118-119.)[3]

The judgment is reversed.

Feinerman, P. J., and Stephens, J., concurred.

---

[3]Since we have found Civil Code section 846 inapplicable, we need not determine whether respondent's failure to plead the statute as an affirmative defense precluded it from relying on the statute at the time of trial. Similarly, we need not decide whether appellant's purpose in entering the building was in fact recreational.