[No. B017139. Second Dist., Div. Six. Sept. 18, 1987.]

ALAN F. COLVIN, a Minor, etc., Plaintiff and Appellant, v. SOUTHERN CALIFORNIA EDISON COMPANY, Defendant and Appellant.

[Opinion certified for partial publication.*]

*Pursuant to rule 976.1 of the California Rules of Court this opinion is certified for partial publication. The portions of this opinion to be published follow.

**COUNSEL**

Richard W. Tentler, Rosenmund & Rosenmund and Rocky J. Baio for Plaintiff and Appellant.

Benton, Orr, Duval & Buckingham and Edwin Duval for Defendant and Appellant.

**OPINION**

**WILLARD, J.—**[*]

Alan Colvin, a 14-year-old boy, sued Southern California Edison Company for damages for personal injuries sustained when a guy wire he was

---

[*] Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

holding contacted a charged conductor owned by defendant. In a special verdict, the jury found facts that established defendant's immunity from liability under Civil Code section 846[1] and judgment was entered in favor of defendant. The trial court subsequently granted a motion for a new trial on two separately stated grounds: (1) that there was insufficient evidence to justify the jury's finding that the accident had occurred on premises in which defendant had an interest within the meaning of section 846, and (2) that consequently it was error to have instructed the jury on immunity.[2] Defendant appeals from the order granting the new trial and we reverse.

. . . . . . . . . . . . . . . . . . . . . . .*

## FACTUAL BACKGROUND

Calleguas Creek flows in a southerly direction through an undeveloped, rural portion of Camarillo, to the east of Lewis Road and between Seminary and Adolph Roads. Defendant owns and operates electrical transmission and distribution lines running about 3,000 feet along the westerly bank of the creek. The lines are supported by poles and conduct electricity at 16,000 and 66,000 volts.

During the winter of 1980, several of the poles along Calleguas Creek were threatened by erosion of the westerly bank. Three new ones were installed outside of the established right of way, back farther from the edge of the bank.

---

[1] All further statutory references are to the Civil Code unless otherwise specified

Section 846 states: "An owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purpose, except as provided in this section. [¶] A 'recreational purpose,' as used in this section, includes such activities as fishing, hunting, camping, water sports, hiking, spelunking, sport parachuting, riding, including animal riding, snowmobiling, and all other types of vehicular riding, rock collecting, sightseeing, picnicking, nature study, nature contacting, recreational gardening, gleaning, winter sports, and viewing or enjoying historical, archaeological, scenic, natural, or scientific sites. [¶] . . . [¶] This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity . . . ."

[2] In plaintiff's memorandum in support of motion for a new trial it was argued that the instruction on immunity should not have been given because section 846 was inapplicable for four other reasons: (a) that defendant's electrical transmission facilities were unsuitable for recreation; (b) that section 846 is irreconcilable with the Public Utilities Code and General Order 95 issued pursuant thereto; (c) that section 846 as it applies to children denies equal protection of the laws and therefore is unconstitutional; and (d) that the instructions given on section 846 were misleading. Without objection, these arguments are addressed by both sides in their briefs on appeal, and we think it would be unfair to refuse to consider them despite the fact that the trial court did not specify them as reasons for its order. If the points, or any of them, had merit, no injustice would result from a correct decision based upon inadequately stated reasons.

*See footnote, *ante,* page 1306.

■ ■■■ ■ The land over which this particular portion of the lines passes was owned by Pardee Construction Company (Pardee).[3] In 1980 Pardee had plans to confine the creek within a channel and to construct improvements on both sides thereof. Pardee's plans were reviewed by defendant, and an understanding was reached about the three poles that were not within the original right of way. Pardee requested that the poles be left where they were so that Pardee could make channel improvements, and defendant agreed. Thereafter Pardee gave defendant temporary permission to retain the three poles at the new location.

In the early afternoon of Sunday, January 23, 1983, plaintiff and his friend Brian Gietzen, age 13, left Brian's house and rode their bicycles to the east side of Calleguas Creek. They intended to take a shortcut across the creek on their way to plaintiff's house. It had rained the previous day and the dirt roadway or ramp where they usually crossed the creek had washed out. The water was too deep to cross at that location. They rode north about a third of a mile along the easterly side of the creek until they found a place where it was wide and shallow enough to cross.

Before they started across the creek, both boys noticed a pole on the other side from which a guy wire dangled. The pole was one of the three new poles mentioned above. The guy wire was hanging "right next to the pole." Plaintiff, who had dismounted his bicycle, was standing in the creek bed where the water was about six inches deep. He grabbed the guy wire with both hands and pulled. This caused the wire to contact an electrical conductor that also was attached to the pole, and plaintiff received an electrical charge that caused him personal injuries.

A Southern California Edison repair crew arrived at the scene shortly after the accident. They found that the anchor of the north guy wire had washed out during the night, leaving the guy hanging slack and close to the pole. The pole itself then stood about 12 feet from the edge of the creek bank. It had originally been somewhere around 35 feet from the bank, indicating that a substantial portion of the embankment had eroded away. The bank itself was vertical, 15 to 20 feet high.

## INSTRUCTIONS AND VERDICTS

Among instructions given to the jury were the following: "An owner of an easement in real property owes no duty of care to keep the premises safe

[3] By licensing appellant's use of the area, Pardee exercised an act of ownership. Such an act raises a disputable presumption of ownership which, in the absence of evidence to the contrary, is decisive. (*Pearson* v. *Hellman Commercial etc. Bank* (1926) 199 Cal. 305, 306-307 [249 P. 10], quoting Code Civ. Proc., § 1963, subd. 12, now Evid. Code, § 638.) Here appellant's superintendent, Gerald Reid, testified that Pardee was the owner and there was no evidence to the contrary. Respondent's attorney, as well as others, referred to Pardee as the owner.

for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purpose, except for a willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity. [¶] A 'recreational purpose,' as used in this section, includes hiking, all types of vehicular riding, and viewing or enjoying natural sights."

"The defendant . . . has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues: [¶] (1) That defendant owned an easement on the property upon which its pole was placed; and [¶] (2) That plaintiff was upon the property for a recreational purpose."

During jury deliberations the jury asked whether an easement could be granted without being written or recorded. The court instructed in writing that "[a]n interest in land sufficient to answer yes to question 1.a. may be created orally and need not be written or recorded."

By a special verdict, the jury answered questions as follows: "Issue No. 1.a. Was the plaintiff on property upon which defendant had an easement?

"Answer *yes*

"Issue No. 1.b. Was the plaintiff on said property for a recreational purpose?

"Answer *yes*

"Issue No. 2. Did the defendant maliciously fail to guard or warn against a dangerous condition?

"Answer *no*"

On the basis of these findings, the trial court entered judgment in favor of defendant.

DEFENDANT'S APPEAL

I

*The Premises*

Section 846 extends immunity under certain conditions not here in issue to "[a]n owner of any estate or any other interest in real property, whether possessory or nonpossessory" with respect to the safety "of the premises."

■ The trial court concluded that the evidence was insufficient to establish that the accident occurred on such "premises."

That defendant had a "nonpossessory" interest in Pardee's land is beyond question. ■ An easement in the land of another entitles its holder to a *"limited use or enjoyment* of the other's land." (3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 340, p. 2040.) ■ A license may be created orally and is also an "interest in land," but not such an interest as to come within the statute of frauds. Like an easement, a license entitles its holder to do an act or acts on the land of another. It differs from an easement in that it is revocable. (*Id.,* at § 381, pp. 2074-2075; Rest., Property, § 512.)

■ Easements and licenses may, but need not, have definite boundaries other than the boundaries of the servient tenements themselves. An easement granted in general terms, nonspecific as to its particular nature, extent or location, is, as mentioned above, perfectly valid. It entitles the holder to choose a "reasonable" location and to use such portion of the servient tenement as may be reasonably necessary for the purposes for which the easement was created. The use actually made by the holder over a period of time fixes the location and the nature and extent of the use. (3 Witkin, *supra,* at §§ 347-348, pp. 2046-2048.) Such an easement necessarily carries with it not only the right but also the duty to maintain and repair the structure or facility for which it was created. (§ 845; 3 Witkin, *supra,* at §§ 350, 371, pp. 2049, 2066, and authorities cited.)

■ Defendant was given a temporary right to retain its poles at the locations they occupied in 1980, nothing further being said about the extent of that right. Further details were not required. As the general rule provides, defendant received authority to make reasonable use of Pardee's land for support of its poles, including the repair of dangling guy wires, the use of whatever space might reasonably be required to make such repairs, and the use of such area as might reasonably be required for access over the remainder of the premises. Regardless of the easement's outer boundaries, they included the location at which plaintiff was injured.

II

*Suitability for Recreational Use*

■ With respect to possessory interests in land, we have ruled that section 846 does not apply to construction sites because they are not intended or suitable for recreational use, even though a child may be playing therein. (*Paige* v. *North Oak Partners* (1982) 134 Cal.App.3d 860 [184 Cal.Rptr. 867]; *Potts* v. *Halsted Financial Corp.* (1983) 142 Cal.App.3d 727

[191 Cal.Rptr. 160].) It is stated in *Paige,* "[w]e hold that Civil Code section 846 is not applicable in the circumstances of this case. The purpose of this statute, enacted in 1963, was to encourage owners to allow the general public to use their land for recreational purposes by relieving such owners of the tort duties which might otherwise arise from such permission. [Citations.] The legislative policy was 'to reduce the growing tendency of landowners to withdraw land from recreational access by removing the risk of gratuitous tort liability that a landowner might run unless he could successfully bar any entry to his property for enumerated recreational uses.' [Citation.] [¶] In light of the purposes of the statute it is inconceivable that the Legislature intended it to apply to a case such as this one. . . . In attempting to provide access for the public to open spaces for recreational use, the Legislature could not have intended to encourage owners and building contractors to allow children to play on their temporary construction projects." (At p. 863.)

In *Potts,* this court disapproved language in *Lostritto* v. *Southern Pac. Transportation Co.* (1977) 73 Cal.App.3d 737 [140 Cal.Rptr. 905], which had applied section 846 to railroad trestle property unsuited for recreation: "[T]his construction of section 846 ignores the general development of California tort law, which has discarded the arbitrary and indiscriminate application of blanket immunities. . . . The interpretation of section 846 urged by *Lostritto,* indiscriminately barring all recreational users from legal recourse, takes no account of this development, and leads to results the Legislature could not have intended. For example, respondent herein would be immune from suits by minors coming to play on the construction site, but would have to defend itself against a thief injured while stealing respondent's lumber. Statutes are not to be given applications leading to inequitable and patently absurd results. [Citation.]" (*Potts* v. *Halsted Financial Corp.,* supra, 142 Cal.App.3d at pp. 731-732.)

Neither *Potts* nor *Paige* involved a nonpossessory interest in premises. Immunity was extended to the owner of such interests by a 1980 amendment to section 846. Prior thereto the owner of a nonpossessory interest had no statutory immunity. (*Darr* v. *Lone Star Industries, Inc.* (1979) 94 Cal.App.3d 895 [157 Cal.Rptr. 90]; *O'Shea* v. *Claude C. Wood Co.* (1979) 97 Cal.App.3d 903 [159 Cal.Rptr. 125].) A dissent in the *Darr* case complained: "To restrict the application of section 846 in this instance will result in inequitable treatment of owners of private bridges over waterways which are accessible to trespassers. The majority would eliminate from the purview of section 846, the owner of a bridge accessible for water sports by trespassers simply because that owner does not own the fee of the underlying waterway. The anomalous situation thus arises that the owner who grants the easement is protected by section 846 while the owner of the

structure over the waterway within the easement which is used for recreational purposes is not." (At pp. 902-903.)

■ Appellant argues persuasively that extension of immunity to the holders of nonpossessory interests must have been motivated by a desire to eliminate the anomaly pointed out by the dissent in *Darr*.

Section 846 refers to keeping "premises" safe for "entry," and to "structures, or activities on such premises." The word *premises* is used in the sense of a tract of land *suitable for recreation*. This requires not only determination of whether the accident location was within the area defendant was licensed to use for its transmission facilities, but also whether that area was suitable for recreational use.

Obviously defendant's physical facilities were not designed or suitable for recreational use. This is not true, however, of the total area defendant had permission to use. That area included space under the suspended transmission and guy wires, and space required to gain access and do required maintenance and repairs. This extended area consisted of natural terrain. It was open to anyone for hiking, cycle riding, exploring, roaming, and (in terms of § 846) "enjoying . . . natural . . . sites." Furthermore, such use was reasonably foreseeable. Therefore it did not fall within the exception to section 846 as an area unsuitable for recreation. There is no policy reason for the courts to carve out an exception to the express language of the statute for the situation here presented. Unless there was some other reason that foreclosed application of section 846, the trial court did not err in instructing the jury with regard to the immunity it provides.

. . . . . . . . . . . . . . . . . . . .*

The order granting a new trial is reversed.

. . . . . . . . . . . . . . . . . . . .*

Stone, P. J., and Abbe, J., concurred.

The petition of plaintiff and appellant for review by the Supreme Court was denied December 2, 1987. Lucas, C. J., did not participate therein.

---

*See footnote, *ante,* page 1306.