Filed 9/10/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| SOUTHERN CALIFORNIA EDISON COMPANY, | 2d Civ. No. B286354 (Super. Ct. No. 56-2013-00437692-CU-OR-VTA) (Ventura County) |
| Plaintiff, Cross-Defendant and Respondent, | |
| v. | |
| STEVEN SEVERNS, | |
| Defendant, Cross-Complainant and Appellant. | |

Steven Severns owns a 15.82-acre parcel of property (the property) which is burdened by three public utility easements granted to Southern California Edison Company (SCE). SCE maintains electrical power lines and supporting structures within a 10-foot wide strip along the eastern boundary of the property. That strip is described by metes and bounds in the recorded conveyances. Each conveyance also grants SCE "free access" to its electrical facilities.

It is undisputed SCE may use the 10-foot wide strip for utility purposes, but the parties disagree as to whether SCE has

the right to access that area by traversing other portions of the property. For nearly 80 years, the property owners allowed such access. When Severns denied access in 2008, SCE brought this action for interference with easement and declaratory relief. Severns cross-complained, seeking damages for nuisance, trespass and ejectment.

The trial court summarily adjudicated the cross-claims in SCE's favor. It determined the claims are barred by the three-year statute of limitations in Code of Civil Procedure section 338, subdivision (b)[1] because the alleged nuisance is permanent rather than continuing. (See *KFC Western, Inc. v. Meghrig* (1994) 23 Cal.App.4th 1167, 1180 (*KFC Western*).)

Following a five-day bench trial, the court found, based on the language in the recorded conveyances, that SCE was granted "floating easements" over the property to access its electrical facilities. Although the floating easements burdened the property at the time of creation, they did not become "fixed" easements until SCE and the property owners agreed on the access routes. At that point, SCE became "the owner of an easement of reasonable width" over each agreed-upon access route. The judgment entitles SCE "to 'free' (i.e. unimpeded) access" to those routes.

Severns appeals both the post-trial decision and the pretrial summary adjudication ruling. He contends the easements granted to SCE are limited to the metes-and-bounds descriptions in the recorded conveyances. He further asserts triable issues of material fact exist as to whether his cross-claims are time-barred. We conclude the trial court properly determined

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

2

SCE owns easements over the agreed-upon access routes. Since its findings also establish the alleged nuisance is permanent, Severns's challenge to the summary adjudication ruling is moot. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The property is located near the corner of Moorpark and Olsen Roads in the City of Thousand Oaks. SCE placed seven electrical power poles on the property in accordance with easements granted by Nils, Ellen and Nicholas Olsen. The poles, which are situated on steep, rocky hillsides, are identified, from north to south, as Poles 1 through 7.

The first of the three easement conveyances was recorded on September 10, 1930. The conveyance grants a four-foot wide easement, described by metes and bounds, and allows for placement of five electrical power poles along the easternmost portion of the property. The instrument states: "The Grantee [SCE] and its employees and agents, shall, at any time when necessary, and at all reasonable times, have free access to the said poles or H-frames, and fixtures thereon, for the purpose of constructing, repairing, renewing, maintaining, replacing and operating such electric lines."

The second conveyance was recorded on February 14, 1956. It grants a 10-foot wide easement, described by metes and bounds, and states: "The Grantee [SCE], its successors and assigns, and its and their respective agents and employees, shall have the right to trim or top such trees as may endanger or interfere with said electric line, and shall have free access to said electric line and every part thereof, at all times, for the purpose of exercising the rights herein granted."

The third conveyance was recorded on February 16, 1961. It has two metes-and-bounds descriptions, running from the

3

north to the south ends of the property. The width of the easement is 20 feet, centered on the property line, meaning 10 feet is on the property and 10 feet is on an adjacent parcel. Consistent with the prior conveyances, the instrument states: "The Grantee [SCE], its successors and assigns, and its and their agents and employees, shall have free access to said electric lines and every part thereof, at all times, for the purpose of exercising the rights herein granted."

Gerald Olsen testified his family routinely allowed SCE employees to drive their trucks over the property to inspect and maintain the electrical power lines, poles and equipment. He recalled his family gave SCE such access to replace a pole in 1946 or 1947. Olsen described the family's relationship with SCE as "very friendly."

At some point, a locked gate was installed across the driveway to the property. When Severns purchased the property in 2006, he gave SCE the gate code and allowed it to continue using the then-existing routes to access its electrical facilities. SCE used those routes about three times a year.

From 1986 to 2007, Robert Martinez, an SCE "lineman," was assigned to inspect and service the electrical power poles and equipment on the property. In 1986, Martinez's supervisor gave him an aerial photograph of the property which showed the dirt roads used to access the poles. Martinez testified he drove over those roads to reach Poles 3, 5 and 6. From those locations, Martinez used binoculars to inspect Poles 2 and 4. He also used binoculars to inspect Poles 1 and 7 from the public streets.

In 2008, SCE informed Severns it needed to replace Poles 1, 5 and 6. The parties discussed the routes that could be used to reach the poles. Severns objected to the use of the route historically utilized to access Pole 5. He complained that SCE

4

trucks had damaged pipes along the route and that it was too close to the back of his house.  The parties agreed SCE would construct an alternative route.  As the trial court observed, "[t]he new route branched off the road to Pole #6, just south and east of the house, and then extended along the east side of the residence to merge with the former route to Pole #5.  The newly created route was steep and, during the work on the poles, the trucks had to be pulled up the steepest stretch with a bulldozer."

Severns believed the new 2008 route would be temporary.  There was no written agreement to that effect, but Severns testified George Perez, an SCE representative, told him "before the road construction that after [Pole 5] was replaced SCE would put the property back in the same condition that it was in prior to the construction of the road."  After the pole was replaced, Severns asked SCE to return the route to its former condition.  SCE did not do so.

Ryan Brown, a senior patrolman for SCE, knew SCE had cut a dirt road into the hillside to facilitate replacement of Pole 5, but was unaware of any agreement between Severns and SCE to return the road to its original condition.  Matthew Payne, a construction crew foreman, testified that such roads are "[u]sually permanent."  Adam Bell, an SCE general supervisor, stated the road was constructed in the manner approved by Severns.  Bell testified SCE typically does not remove roads once they are established.

Severns conceded he had no problem with SCE's use of the access routes until the dispute arose regarding the 2008 route.  Severns removed the gate access code/tumbler box and took other steps to prevent SCE's access.  He suggested that SCE use adjacent properties or helicopters to access its electrical facilities.

5

SCE subsequently filed this action. In its second amended complaint, SCE alleged Severns unreasonably interfered with its easement rights by placing structures and trees on the property, by refusing to allow it to construct a new access route, and by blocking its access to the property for routine and emergency maintenance.

In his first amended cross-complaint, Severns alleged claims for continuing nuisance, permanent nuisance, trespass and ejectment.[2] SCE moved for summary adjudication of the cross-claims, arguing they are barred by the three-year limitations period in section 338, subdivision (b). Severns asserted that because the hillside along the 2008 route can be repaired, the nuisance is abatable and therefore continuing, not permanent. The trial court granted the motion, concluding the 2008 route is not a continuing nuisance. It determined that if Severns "wanted [SCE] to stand by its (alleged) commitment to restore the property, he had to act within three years after the bulldozer finished its work. He did not do so."

Following trial and a site visit, the trial court issued a proposed statement of decision. The court rejected both SCE's position that it is entitled to unfettered access over the property and Severns's position that the easements are limited to the metes-and-bounds descriptions, i.e., the 10-foot wide strip defined in the recorded conveyances. It determined the conveyances grant SCE floating easements over the property to permit the inspection and maintenance of its electrical facilities. The

---

[2] Severns also sought to quiet title with respect to a deeded easement executed by Joel and Francis McCrea in 1961. SCE conceded this easement does not burden the property and thus did not oppose the claim.

6

floating easements became "fixed" easements when SCE and the property owners agreed on the access routes.

The trial court further found SCE and Severns had agreed by acquiescence to abandon the original route to Pole 5 and to change the location of that access easement to the 2008 route. The court concluded SCE may not construct a new access route or use portions of the property falling outside the 10-foot wide strip and the delineated access routes, but it may perform geotechnical testing incident to repairs and improvements on those routes and trim or remove interfering trees.

Accordingly, the trial court entered judgment in SCE's favor on the second amended complaint and the first amended cross-complaint. It confirmed SCE is the owner of access easements of reasonable width over the routes identified in the judgment.

DISCUSSION

A. *The Recorded Conveyances Grant SCE Floating Easements for Access Purposes*

Severns contends the trial court erred by finding the Olsen family granted SCE multiple floating easements outside the area defined by the metes-and-bounds footage descriptions in the recorded conveyances. He claims the law and substantial evidence do not support the court's decision. We conclude otherwise.

1. *Standard of Review*

In interpreting a conveyance, the intent of the parties is the paramount consideration. (Civ. Code, § 1636; *City of Manhattan Beach v. Superior Court* (1996) 13 Cal.4th 232, 238 (*City of Manhattan Beach*); *Machado v. Title Guarantee and T. Co.* (1940) 15 Cal.2d 180, 186.) "It is not the intent of the grantor that

7

governs in such cases.  It is the joint intent of the grantor and the grantee." (*Marlin v. Robinson* (1932) 123 Cal.App. 373, 375.)

"Grants are to be interpreted in like manner with contracts in general." (Civ. Code, § 1066; *City of Manhattan Beach*, *supra*, 13 Cal.4th at p. 238.) "The interpretation of an easement, which does not depend upon conflicting extrinsic evidence, is a question of law." (*Van Klompenburg v. Berghold* (2005) 126 Cal.App.4th 345, 349; *McCann v. City of Los Angeles* (1978) 79 Cal.App.3d 112, 115, fn. 2.) We apply independent review to questions of law. (*Kellogg v. Garcia* (2002) 102 Cal.App.4th 796, 802-803.) To the extent resolution of the appeal turns on the trial court's factual findings, we review such findings under the substantial evidence standard. (See *Orange County Water Dist. v. MAG Aerospace Industries, Inc.* (2017) 12 Cal.App.5th 229, 239-240.)

## 2.   *Creation of the Floating Easements*

At trial, the parties advanced different interpretations of the recorded conveyances.  SCE claimed it is entitled to access its electrical facilities by any "feasible" route over the property. Severns argued SCE's use of the property is limited to the specifically defined 10-foot wide strip.  We conclude the trial court correctly determined "the legal effect of the conveyance[s] falls between [those] opposing positions."

Each of the three recorded conveyances contains broad language affording SCE "free access" to its electrical facilities for inspection and maintenance purposes.  The 1930 instrument grants SCE "*free access* to the said poles or H-frames, and fixtures thereon, for the purpose of constructing, repairing, renewing, maintaining, replacing and operating such electric lines." (Italics added.)  The 1956 and 1961 instruments similarly grant SCE "*free access* to [its] electric lines and every part

8

thereof, at all times, for the purpose of exercising the rights herein granted." (Italics added.)

The recorded conveyances do not identify the portion or portions of the property that may be used to allow SCE "free access" to its electrical facilities. Some expressly granted easements -- commonly known as "floating easements" -- are not specifically defined as to location by the creating conveyance. (*City of Los Angeles v. Howard* (1966) 244 Cal.App.2d 538, 541.) Such easements are nonetheless fully valid and enforceable by their holders. As we stated in *Colvin v. Southern Cal. Edison Co.* (1987) 194 Cal.App.3d 1306 (*Colvin*), abrogated on another ground by *Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1106-1108, "[e]asements and licenses may, but need not, have definite boundaries other than the boundaries of the servient tenements themselves. An easement granted in general terms, nonspecific as to its particular nature, extent or location, is . . . perfectly valid. It entitles the holder to choose a 'reasonable' location and to use such portion of the servient tenement as may be reasonably necessary for the purposes for which the easement was created. The use actually made by the holder over a period of time fixes the location and the nature and extent of the use. [Citations.] Such an easement necessarily carries with it not only the right but also the duty to maintain and repair the structure or facility for which it was created. [Citations.]" (*Id.* at p. 1312; see 6 Miller & Starr, Cal. Real Estate (4th ed. 2018) § 15:50, pp. 184-186.)

Severns argues the "free access" language in the conveyances simply means SCE is entitled to move freely within the 10-foot wide metes-and-bounds easement area. The trial court rejected this interpretation, concluding "[t]he interest conveyed was a 'floating easement' for access purposes."

9

The recorded conveyances "must be interpreted as a whole, with each clause aiding the interpretation in the attempt to give purpose to every part, and the interpretation should, where possible, give effect to every part so that no clause is redundant." (*Super 7 Motel Associates v. Wang* (1993) 16 Cal.App.4th 541, 546 (*Super 7*); see *Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1507 (*Brandwein*) ["when interpreting a contract, we strive to interpret the parties' agreement to give effect to all of a contract's terms, and to avoid interpretations that render any portion superfluous, void or inexplicable"].)

It is undisputed the recorded conveyances, taken together, grant SCE easements over the 10-foot wide strip for utility purposes. This grant would be meaningless if SCE could not move freely within that strip to construct, replace, inspect and maintain its electrical power poles, lines and equipment. Thus, SCE's right to move freely within that area is not dependent upon the "free access" language. The only reasonable interpretation is that the Olsen family intended, through that language, to grant SCE some right of access over the property to reach its electrical facilities. Under Severns's interpretation, the "free access" language would be both redundant and unnecessary. (See *Brandwein*, *supra*, 218 Cal.App.4th at p. 1507; *Super 7*, *supra*, 16 Cal.App.4th at p. 546.)

This is particularly evident in the 1930 conveyance, which grants SCE a four-foot wide defined easement to maintain five electrical power poles. It also gives SCE "free access" to the "poles or H-frames, and fixtures thereon, for the purpose of constructing, repairing, renewing, maintaining, replacing and operating [the] electric lines." Gerald Olsen confirmed SCE's replacement of a pole in 1946 or 1947. SCE employees testified it would be impossible to replace a pole with a ground crew without

10

using line trucks.  If "free access" were limited to the four-foot defined easement, the remainder of the language would be superfluous.  (See *Brandwein, supra,* 218 Cal.App.4th at p. 1507; *Super 7, supra,* 16 Cal.App.4th at p. 546.)  That area is not wide enough to support vehicular access for pole replacement and other maintenance.

The 1956 and 1961 conveyances extend the width of the metes-and-bounds easement to 10 feet, but the grantor, Nicholas Olsen, once again accorded SCE "free access" to its electrical facilities "for the purpose of exercising the rights herein granted." The conveyances do not limit SCE's "free access" to the 10-foot wide strip, and it is reasonable to conclude the grantor intended to preserve SCE's access rights to that area.

Even if we assume the "free access" language is ambiguous, the extrinsic evidence established the Olsen family understood the recorded conveyances grant SCE the right to traverse the property to access the 10-foot wide strip.  "'It is a "cardinal rule of construction that when a contract [or conveyance] is ambiguous or uncertain the practical construction placed upon it by the parties before any controversy arises as to its meaning affords one of the most reliable means of determining the intent of the parties." [Citation.]'" (*Jacobs v. Locatelli* (2017) 8 Cal.App.5th 317, 326; *Gramer v. City of Sacramento* (1935) 2 Cal.2d 432, 440.) The evidence confirmed that for decades the Olsen family freely allowed SCE to drive over the property to access its electrical facilities.  Severns similarly permitted access until the dispute arose over the restoration of the 2008 route.  This historical usage of the property is consistent with our interpretation of the conveyances.

11

### 3. *Location of the Access Easements*

Where, as here, "an instrument conveys or reserves an unlocated, 'floating' easement, it is presumed that the parties intended to establish a reasonably suitable and convenient route in view of the anticipated needs of both parties." (6 Miller & Starr, *supra*, §15:50, p. 185, fn. omitted; *Colvin, supra,* 194 Cal.App.3d at p. 1312.) "Thus, the right cannot be exercised over the entire servient tenement, but until the easement is located, it is a cloud on the title to all of the property." (6 Miller & Starr, *supra*, § 15:50, p. 185; fn. omitted; *Youngstown Steel Products Co. v. City of Los Angeles* (1952) 38 Cal.2d 407, 410 (*Youngstown*); *Maywood Mut. Water Co. No. 2 v. City of Maywood* (1972) 23 Cal.App.3d 266, 270.)

Severns contends substantial evidence does not support the trial court's finding the recorded conveyances grant easements for access purposes over the property. As we have discussed, the easements were floating at the time they were conveyed because the routes to access SCE's electrical facilities had yet to be fixed. "The use of the easement in a particular course without objection by the owner of the servient tenement establishes [or fixes] the easement along the route used." (6 Miller & Starr, *supra*, § 15:50, pp. 186-187, fn. omitted; *Colvin, supra,* 194 Cal.App.3d at p. 1312.) Once that occurs, the easement's location is no longer floating and cannot be altered without the parties' consent. (6 Miller & Starr, *supra*, § 15:50, pp. 186-187, fn. omitted.)

SCE maintains the floating easements became fixed easements when the Olsen family and then Severns permitted SCE to access its electrical facilities by using certain dirt roads traversing the property. As the trial court observed, "prior to 2008 there was a long and uncontested history of use of the property by SCE for access purposes along the routes indicated"

12

by Martinez on the aerial photograph introduced at trial. Gerald Olsen testified his family had no problem affording SCE such access, and Severns acknowledged he had allowed access until 2008. This evidence overwhelmingly supports the court's conclusion that SCE has a fixed access easement over all but one of the routes appearing on the photograph.

The exception involves the original route to Pole 5. The trial court found the route changed in 2008 when Severns asked SCE to construct an alternative route to that pole. Because substantial evidence supports the court's finding "the original route across the north side of the house has been abandoned and that the road along the east side of the house has been established as the new access route," we uphold its determination that SCE is the owner of access easements over the routes, including the 2008 route, identified in the judgment. We are not persuaded by Severns's argument the 2008 route was meant to be temporary. The court heard conflicting testimony on this issue and ruled in SCE's favor. Such credibility determinations are the province of the trial court. (*Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 213; see *Conservatorship of Amanda B.* (2007) 149 Cal.App.4th 342, 347 ["An appellate court . . . will sustain the trial court's factual findings if there is substantial evidence to support those findings, even if there exists evidence to the contrary"].)

Severns also asserts the trial court abused its discretion by denying his request to introduce evidence that SCE could have used a neighboring property to access its electrical facilities. This evidence is irrelevant because the court's decision is based on contract principles, i.e., the recorded conveyances grant SCE (1) a utility easement over the area described by metes and bounds and (2) floating easements for the purpose of accessing that

13

defined area.  The floating easements became fixed easements once SCE and the property owners agreed upon the access routes. (See 6 Miller & Starr, *supra*, § 15:50, pp. 186-187, fn. omitted; *Colvin, supra,* 194 Cal.App.3d at p. 1312.)  That SCE may have had other access options does not affect the rights granted by the conveyances.

### B. SCE Did Not Forfeit Its Statute of Limitations Defense to the Cross-Claims

Prior to trial, the court granted SCE's motion for summary adjudication of Severns's cross-claims for nuisance, trespass and ejectment based on the expiration of the three-year statute of limitations in section 338, subdivision (b).  Severns argues SCE forfeited that affirmative defense by failing to properly plead it in its answer to the first amended cross-complaint.  SCE alleged the cross-claims are "barred by the applicable statutes of limitation including, but not limited to, those set forth in [sections] 312, *et seq.*"

Section 458 provides:  "In pleading the statute of limitations it is not necessary to state the facts showing the defense, but it may be stated generally that the cause of action is barred by the provisions of section ___ (giving the number of the section and subdivision thereof, if it is so divided, relied upon) of the Code of Civil Procedure; and if such allegation be controverted, the party pleading must establish, on the trial, the facts showing that the cause of action is so barred."  This section "has been strictly construed as requiring that the relevant statute and subdivision, if applicable, be pleaded, otherwise the answer fails to raise the statute of limitations defense." (*Coy v. County of Los Angeles* (1991) 235 Cal.App.3d 1077, 1086, fn. 5 (*Coy*).)  "Enforcement of that rule, however, depends upon the diligence with which the opposing party objects to the pleading

14

defect by way of demurrer or otherwise." (*Ibid.*; *Davenport v. Stratton* (1944) 24 Cal.2d 232, 246-248; *Hydro-Mill Co., Inc. v. Hayward, Tilton and Rolapp Ins. Associates, Inc.* (2004) 115 Cal.App.4th 1145, 1165.)

In *Coy,* the Court of Appeal determined the "plaintiff waived his objection to the manner in which [the defendant] pleaded its statute of limitations defense by failing to diligently raise and secure a ruling on that objection at the time of the summary judgment motion hearing." (*Coy, supra*, 235 Cal.App.3d at p. 1086, fn. 5.) The same is true here. Severns did not object to SCE's pleading of the defense, either through a demurrer or in opposition to SCE's summary adjudication motion. Consequently, he has waived any such objection to the pleading. (*Ibid.*; see *In re Marriage of Walker* (2006) 138 Cal.App.4th 1408, 1418 [permitting a party to raise a new theory on appeal is unfair to the trial court and unjust to the opposing litigant].)

### C. *Severns's Challenge to the Pretrial Summary Adjudication Ruling is Moot*

Severns contends that even if SCE did not forfeit its statute of limitations defense, the summary adjudication ruling must be reversed because triable issues of material fact exist regarding the timeliness of his cross-claims. He specifically contests the trial court's pretrial determination that SCE's creation of the 2008 route constitutes a permanent, rather than continuing, nuisance.[3]

---

[3] Different judges presided over the trial and summary adjudication proceedings. To avoid confusion, we refer to the judge who issued the post-trial decision as the "trial judge."

It is undisputed the cross-claims are governed by the three-year statute of limitations for damage to real property. (§ 338, subd. (b).) It also is undisputed the alleged damage occurred in 2008, when SCE constructed the new access route to Pole 5. Severns did not file his cross-complaint until 2013.

"If a nuisance is permanent, the plaintiff ordinarily must bring one action for all past, present and future damage within three years after the permanent nuisance is created. [Citation.] If on the other hand the nuisance is continuing, every repetition of the continuing nuisance is a separate wrong, subject to a new and separate limitation period for which the plaintiff may bring successive actions for damages until the nuisance is abated even though an action based on the original wrong may be barred. [Citations.]" (*KFC Western*, *supra*, 23 Cal.App.4th at p. 1180; accord *McCoy v. Gustafson* (2009) 180 Cal.App.4th 56, 106.)

In their original briefing, the parties did not discuss whether an affirmance of the post-trial decision in SCE's favor would affect Severns's argument that triable issues of material fact remain regarding whether the alleged nuisance is permanent or continuing. Generally, an "error may lead to reversal only if we are persuaded 'upon an examination of the entire cause' that there has been a miscarriage of justice. In other words, we are not to look to the particular ruling complained of in isolation, but rather must consider the full record in deciding whether a judgment should be set aside." (*Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833.)

We asked the parties to submit supplemental letter briefing on the following issue: "Would an affirmance of Judge Borrell's determination that respondent owns an easement for access purposes over the 2008 route undermine or otherwise affect appellant's argument that the alleged nuisance is a continuing

16

rather than a permanent nuisance?  (See *Spaulding v. Cameron* (1952) 38 Cal.2d 265, 267 . . .; *Spar v. Pacific Bell* (1991) 235 Cal.App.3d 1480, 1484 . . . .  In other words, assuming respondent acquired an access easement over the 2008 route at the time it was created, is it possible to conclude the alleged nuisance is a continuing nuisance?"  (See § 437c, subd. (m)(2).)

Severns's supplemental brief reiterates his position that "[t]he easement documents do not include a right to maintain and build roads on [the] property" and that "[t]he temporary dirt road is not a permanent nuisance."  We have rejected the first contention and determined substantial evidence supports the trial judge's finding that the 2008 route was not meant to be temporary.

SCE maintains "the floating easement determination, if affirmed, showed permanence [of the alleged nuisance].  So, in essence, this is the end game in this case, no matter what the prior consonant determination."  We agree.  To the extent a triable issue of material fact did exist regarding the nature of the nuisance, it was resolved by the trial judge.  His findings support only one conclusion, i.e., the alleged nuisance is permanent rather than continuing.  Hence, any possible error in the pretrial summary adjudication of that issue is irrelevant.

As our Supreme Court has stated "[t]he clearest case of a permanent nuisance or trespass is the one where the offending structure or condition is maintained as a necessary part of the operations of a public utility.  Since such conditions are ordinarily of indefinite duration and since the utility by making compensation is entitled to continue them, it is appropriate that only one action should be allowed to recover for all the damages inflicted.  It would be unfair to the utility to subject it to successive suits and unfair to the injured party if he were not

17

allowed to recover all of his probable damages at once."[4] (*Spaulding v. Cameron*, *supra*, 38 Cal.2d at p. 267.)

In *Spar v. Pacific Bell*, *supra*, 235 Cal.App.3d 1480, the defendant utility company voluntarily removed underground telephone conduits, lines and manholes before trial. (*Id.* at p. 1482.) Notwithstanding their removal, the court concluded the structures had the characteristics of a permanent nuisance. (*Id.* at p. 1486.) The structures were intentionally placed to provide indefinite service to the public, their installation and removal required considerable effort and heavy equipment, and the public utility could have kept the structures by paying fair compensation. (*Ibid.*)

Here, the trial judge found SCE had a fixed access easement over the original route to Pole 5. When the parties agreed to replace that route in 2008, SCE acquired an access easement over the new route to facilitate pole replacement and other utility upkeep. (See *Youngstown*, *supra*, 38 Cal.2d at pp. 410-411; *Colvin*, *supra*, 194 Cal.App.3d at p. 1312.) Consequently, the 2008 route "is maintained as a necessary part of the operations of a public utility." (*Spaulding v. Cameron*, *supra*, 38 Cal.2d at p. 267.) In addition, there is no question that SCE expended considerable effort to construct the route, which

---

[4] Severns contends this language is dicta. Even if he is correct, "[g]enerally speaking, [we] follow dicta from the California Supreme Court." (*Hubbard v. Superior Court* (1997) 66 Cal.App.4th 1163, 1169.) This is particularly true where, as here, the same language has been quoted and applied in subsequent cases. (E.g., *Baker v. Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 874; *Kornoff v. Kingsburg Cotton Oil Co.* (1955) 45 Cal.2d 265, 270; *Santa Fe Partnership v. ARCO Products Co.* (1996) 46 Cal.App.4th 967, 974.)

required the use of bulldozers and other heavy equipment, and that its removal would be similarly difficult. (See *Spar v. Pacific Bell*, *supra*, 235 Cal.App.3d at p. 1486.) Indeed, Severns concedes the removal would cost about $315,000.

The trial judge further found the 2008 route was of indefinite duration and may only be altered with the parties' consent. (See *Spaulding v. Cameron*, *supra*, 38 Cal.2d at p. 267.) Given SCE's contractual right to indefinitely use the 2008 access route for public utility purposes, this case falls squarely within the Supreme Court's definition of "[t]he clearest case of a permanent nuisance." (*Ibid.*) Accordingly, "only one action should be allowed to recover for all the damages inflicted." (*Ibid.*; *Spar v. Pacific Bell*, *supra*, 235 Cal.App.3d at p. 1486; see *Mangini v. Aerojet-General Corp.* (1996) 12 Cal.4th 1087, 1100 ["Regardless of literal abatability, where as a *practical* matter either abatement or successive lawsuits would be inappropriate or unfair then the nuisance may be regarded as permanent and the plaintiff relegated to a single lawsuit, subject to a single limitation period, for all past and anticipated future harms"].)

Severns does not dispute that he missed the three-year deadline for filing claims based on a permanent, rather than continuing, nuisance. (See § 338, subd. (b); *Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1216-1217; *KFC Western*, *supra*, 23 Cal.App.4th at p. 1180.) The trial judge's post-trial findings preclude a determination the alleged nuisance is continuing and thus confirm its permanent nature. Since that issue was resolved at trial, Severns's challenge to the pretrial summary adjudication of the issue is

19

moot.[5]  (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214 ["A case is moot when the decision of the reviewing court 'can have no practical impact or provide the parties effectual relief'"]; *Steiner v. Superior Court* (2013) 220 Cal.App.4th 1479, 1485 [same].)

DISPOSITION

The judgment is affirmed.  SCE shall recover its costs on appeal.

CERTIFIED FOR PUBLICATION.

PERREN, J.

We concur:


YEGAN, Acting P. J.


TANGEMAN, J.

---

[5] In light of our decision, we deny Severns's request for judicial notice filed on April 29, 2019.

20

Mark S. Borrell, Judge
Rebecca S. Riley, Judge
Superior Court County of Ventura

_____

Slaughter, Reagan & Cole, William M. Slaughter, Barry J. Reagan, Gabriele M. Lashly and Jonathan D. Marshall for Defendant, Cross-Complainant and Appellant.

AlvaradoSmith, Keith E. McCullough and William M. Hensely, for Plaintiff, Cross-Defendant and Respondent.